50 F.3d 6
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Soraya F. FARES; Marie Assa'ad-Faltas, Plaintiffs-Appellants,
v.
U.S. IMMIGRATION & NATURALIZATION SERVICE; Thomas P.
Fischer, District Director, U.S. Immigration and
Naturalization Service; Unnamed Immigration Employees, in
their official capacity, Defendants-Appellees,
and
Joan M. ALTEKRUSE, in her individual capacity, Defendant.
 No. 94-1339.
 United States Court of Appeals, Fourth Circuit.
 Submitted Feb. 28, 1995.
Decided Mar. 20, 1995.
 
 Orin G. Briggs, Greenville, SC, for appellants. Frank W. Hunger, Asst. Atty. Gen., David J. Kline, Michele Y.F. Sarko, Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, DC, for appellees.
 Before MURNAGHAN and WILKINSON, Circuit Judges, and PHILLIPS, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Appellants appeal from district court orders that dismissed a claim under the Privacy Act, 5 U.S.C.A. Sec. 552a (West Supp.1994), for lack of standing, and dismissed Appellants' challenges to exclusion proceedings and claims concerning adjustment of status for lack of jurisdiction because they had not exhausted administrative remedies. For the reasons discussed below, we affirm.
 
 
 2
 Appellants Soraya F. Fares (Fares), a United States citizen, and her daughter, Dr. Marie-Therese H. Assa'ad-Faltas (Faltas), a citizen of Egypt, are both Coptic Orthodox Christians, a minority in largely Muslim Egypt. Fares and Faltas fear that if Faltas is sent back to Egypt, she will suffer persecution and possible physical harm because she is a religious minority. Faltas entered the United States as an exchange visitor using a J-1 visa. Under the terms of this visa, Faltas was allowed to come to the United States to study for a graduate medical degree on the condition that she return to Egypt for two years following the completion of her program before she could become eligible for permanent residence in the United States. Faltas's visa expired in May 1982. She remained in the United States, however, even though the INS sent her a letter requiring her to depart by November 10, 1982. Faltas left the country in September 1983, and returned on December 4, 1983 using a B-2 temporary visitor's visa. Although B-2 visas automatically expire after six months and may only be renewed for one additional six-month period, Faltas remained in the United States for over four years. On May 4, 1988, Faltas applied for amnesty and legalization. The INS denied Faltas's application in January 1990. The INS Legalization Appeals Unit denied Faltas's appeal in February 1992.
 
 
 3
 In a separate proceeding in June 1988, Faltas submitted an application to the INS to adjust her status to lawful permanent resident based upon an approved second-preference visa petition. The INS denied the application in October 1988. One of the reasons the application was denied was that Faltas failed to fulfill her two-year Egyptian residency, or "homestay," requirement.
 
 
 4
 In October 1988, the INS commenced deportation proceedings against Faltas because her B-2 visitor's visa expired. During these proceedings, Faltas requested and was granted advance parole because she had decided to leave the United States; advance parole gave her pre-approval to return while her legalization application was being processed. Because Faltas was now a parolee and no longer deportable, the immigration judge terminated deportation proceedings pursuant to Faltas's motion.
 
 
 5
 In January 1990, the INS denied Faltas's application for legalization. Because Faltas was granted parole for the express purpose of pursuing legalization, she was eligible to have her parole revoked. However, because Faltas appealed the denial of legalization, the INS extended Faltas's parole until March 1, 1991, or until her legalization appeal was decided, whichever occurred first.
 
 
 6
 In June 1990, Faltas applied a second time for adjustment of status based on a first-preference visa petition because her mother, Appellant Soraya F. Fares, had become a United States citizen. The INS denied the application because Faltas failed to fulfill her homestay requirement and because she engaged in unlawful employment between April 1985 and April 1987. Faltas's third application for adjustment of status, filed in June 1992, was lost and therefore never acted upon by the INS.
 
 
 7
 In December 1993, Faltas's work authorization expired. At the time of the district court's decision, Faltas's renewal application had not been adjudicated. After the second adjustment application was denied and after the Legalization Appeals Unit denied Faltas's appeal of her legalization application, the INS revoked Faltas's parole and commenced exclusion proceedings, charging that Faltas was excludable because she was an immigrant without a valid unexpired entry document. The INS instituted the proceedings because Faltas had not fulfilled the two-year homestay requirement and the INS had not received a "no objection" letter from the Egyptian government waiving the homestay requirement. While the exclusion proceedings were pending, but before there was an order of exclusion or deportation, Faltas and Fares initiated the present action.
 
 
 8
 Fares and Faltas sought declaratory and injunctive relief as well as damages from the Defendants. Specifically, they requested an order enjoining the INS from proceeding against Faltas in exclusion proceedings and requested that the district court adjudicate the exclusion proceedings. Additionally, they requested that the district court declare that the INS wrongfully denied Faltas's adjustment of status and that the court enjoin the INS from denying Faltas's application to adjust status. Further, they requested that the court order the INS to renew Faltas's work authorization. They also alleged that the INS had revealed Faltas's immigration file to unauthorized persons. Finally, Appellants asserted that the INS had committed a series of constitutional violations and raised an equal protection claim through various subsequent filings with the district court. The plaintiffs claimed that the immigration laws violated Fares's equal protection rights because the laws provided special treatment for a citizen spouse or child of an exchange visitor, but did not provide similar treatment for a citizen parent or sibling of an exchange visitor.
 
 
 9
 The district court entered a preliminary injunction prohibiting the INS from taking Faltas into custody or deporting her pending briefing and a hearing on whether the district court had jurisdiction over the claims. After the hearing, the district court dissolved the injunction and held that Faltas failed to exhaust her administrative remedies; the court dismissed all but one of her claims without prejudice on these grounds. The court construed Faltas's remaining claim, that unauthorized persons viewed her immigration file, as a claim under the Privacy Act, 5 U.S.C.A. Sec. 522a (West 1977 & Supp.1994), and dismissed that claim with prejudice. The court found that since Faltas was not a citizen, she lacked standing to bring the claim.
 
 
 10
 Faltas and Fares moved for reconsideration and requested a stay of the district court's order dissolving the injunction pending the outcome of the appeal. The district court denied the motion on both counts. The court, however, ordered the INS to inform the court prior to deporting Faltas so Faltas would have an opportunity to request an injunction.
 
 I.
 
 11
 The district court dismissed Appellants' request for relief with respect to the exclusion proceedings. Although the proceedings were pending, an exclusion order had not been entered. An alien must exhaust all administrative remedies before an exclusion order is considered final and subject to judicial review. 8 U.S.C. Sec. 1105a(c) (1988). Even then, a final order of exclusion may only be reviewed in a properly initiated habeas corpus proceeding. 8 U.S.C. Sec. 1105a(b) (1988). Because Faltas has not exhausted her administrative remedies and there has not been a final order of exclusion, the district court properly concluded that it could not entertain Appellants' challenges to the exclusion proceedings.
 
 II.
 
 12
 In their complaint challenging the INS's denial of Faltas's adjustment of status, Appellants contend that they should not be required to exhaust administrative remedies since there is no appeal from a denial of adjustment of status. They are partially correct. The decision to grant adjustment of status is discretionary, 8 U.S.C. Sec. 1255(a) (1988), and no appeal lies from the denial of adjustment of status. 8 C.F.R. Sec. 245.2(a)(5)(ii)(1994). However, when an adjustment of status application has been denied, it may be renewed in exclusion proceedings. 8 C.F.R. Sec. 245.2(a)(1). In addition, during the exclusion hearing, Faltas may apply for asylum based on her fear of religious persecution. 8 C.F.R. Secs. 208.13, 209.1, 209-2.
 
 
 13
 Before a person is entitled to judicial relief for a prospective injury, she must first exhaust her administrative remedies. Darby v. Kemp, 957 F.2d 145, 147 (4th Cir.1992), rev'd on other grounds, 61 U.S.L.W. 4679 (U.S.1993). "The exhaustion doctrine allows an agency to exercise its discretion and apply its expertise, ensures autonomy, and avoids premature intervention by the courts." Id. It also allows the courts to benefit from a fully developed agency record. Id.
 
 
 14
 A party is not required to exhaust administrative remedies if: (1) the dispute concerns statutory construction; (2) using administrative procedures would cause irreparable injury; (3) resorting to administrative procedures would be futile; (4) administrative remedies would be inadequate; or (5) the administrative decision would go unreviewed. See generally Darby, 957 F.2d at 147; McDonald v. Centra, Inc., 946 F.2d 1059, 1063 (4th Cir.1991), cert. denied, 60 U.S.L.W. 3815 (U.S.1992). Faltas's request for review of her denial of adjustment of status does not fall into any of these exceptions. It does not involve statutory construction. Requiring Faltas to first renew her request for adjustment of status in front of an immigration judge (IJ) at the exclusion proceedings would not cause irreparable injury. Presenting the request to the IJ would not be futile. If the IJ grants Faltas's request, that would be an adequate remedy. Finally, if the IJ denies the request for adjustment of status, that denial would be subject to judicial review in a habeas action challenging the exclusion order. See Crespo-Gomez v. Richard, 780 F.2d 932, 933-34 (11th Cir.1986) (reviewing denial of discretionary relief incident to exclusion proceeding in habeas appeal). Thus, since Faltas failed to exhaust her administrative remedies, and because this case does not fall into one of the exceptions enumerated above, the district court properly concluded that it would be premature to review Faltas's claim that she was improperly denied adjustment of status.*
 
 III.
 
 15
 Appellants assert that since their claims involved constitutional challenges which could not be resolved through administrative channels, the district court should have retained jurisdiction over those claims. A court should not decide questions of constitutionality unless there is no other ground upon which the case can be disposed. Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 346-47 (1936). Appellants have many opportunities for relief before a court would be required to entertain their constitutional challenges. Thus, the district court properly concluded that the mere presence of constitutional claims does not exempt Appellants from the requirements of the doctrine of administrative exhaustion. Aircraft & Diesel Equip. Corp. v. Hirsch, 331 U.S. 752, 763-67 (1947).
 
 IV.
 
 16
 The district court properly construed Faltas's invasion of privacy claim as a claim under the Privacy Act. Additionally, Faltas conceded that it was a Privacy Act claim in her brief filed with this Court. The district court properly found that Faltas was not protected by the Privacy Act since the Act only protects citizens of the United States or aliens lawfully admitted for permanent residence. 5 U.S.C. Sec. 552a(a)(2) (1988). Faltas does not fall into either category. Accordingly, the district court properly dismissed this claim with prejudice.
 
 
 17
 In light of the foregoing, we deny Appellants' motion for judicial notice and affirm on the reasoning of the district court. We also deny Appellants' motion for oral argument and Appellants' emergency motion for a three-judge panel to hear oral argument on the motion for oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid in the decisional process. To the extent that the motion for oral argument was considered by a three-judge panel, we grant Appellants' motion for referral of their motion for oral argument to a panel of judges.
 
 AFFIRMED
 
 
 *
 For these same reasons, the district court properly dismissed, as not ripe for review for failure to exhaust administrative remedies, Faltas's request that INS be ordered to issue her a work authorization