Marie–Therese H. ASSAAD–FALTAS, Plaintiff,

v.

The UNIVERSITY OF SOUTH CAROLINA, et al., Defendants.

Marie-Therese H. ASSAAD–FALTAS, Plaintiff,

v.

The ATTORNEY GENERAL OF VIRGINIA, et al., Defendants.

Marie–Therese H. ASSAAD–FALTAS, Plaintiff,

v.

STATE NEWSPAPER, et al., Defendants.

Marie–Therese H. ASSAAD–FALTAS, Plaintiff,

v.

U.S. IMMIGRATION AND NATURALIZATION SERVICE, et al., Defendants.

C.A. Nos. 3:94–1578–19, 3:95–1521–19, 3:95–3324–19 and 3:96–180–19.

United States District Court, D. South Carolina, Columbia Division.

April 15, 1997.

Marie–Therese H. Assaad–Faltas, pro se, Plaintiff.

Defendants' attorneys not pertinent to this Order.

## *ORDER*

SHEDD, District Judge.

Proceeding pro se and in forma pauperis ("IFP"), *see* 28 U.S.C. § 1915; Fed. R.App. P. 24(a); Marie–Therese H. Assaad–Faltas is currently appealing the above-captioned cases to the United States Court of Appeals for the Fourth Circuit. Because it clearly appeared to the Court—by virtue of the prolific litigiousness in which she has engaged— that Faltas is not truly indigent so as to be entitled to the privilege of IFP status, the Court, on March 19, 1997, sua sponte ordered her to show cause, by March 31, why her IFP status should not be revoked and why she should not be required to pay retroactively the civil and appellate filing fees for the above-captioned cases.[1] On March 31, Faltas filed her response in the form of an affidavit. The Court has now carefully considered this matter and, for the reasons set forth below, finds that Faltas' IFP status should be revoked and that she should be

---

1. On March 24, Faltas filed a motion to clarify and/or stay the March 19 Order. On March 25, the Court denied the amended motion and instructed Faltas to comply with the directives of the March 19 Order.

required to pay retroactively the aforementioned filing fees.

## I

■ IFP status is "a privilege, not a right," *Weaver v. Pung*, 925 F.2d 1097, 1099 n. 4 (8th Cir.), *cert. denied*, 502 U.S. 828, 112 S.Ct. 99, 116 L.Ed.2d 70 (1991); that is based on the "policy of equality of access, ensuring that those who cannot afford the payment of costs have the same ability to present meritorious claims as those who can afford such payment." *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 953 (4th Cir.1995) (en banc), *cert. denied*, —— U.S. ——, 116 S.Ct. 1273, 134 L.Ed.2d 219 (1996). A person need not be "absolutely destitute" to proceed IFP. *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339, 69 S.Ct. 85, 89, 93 L.Ed. 43 (1948). Rather, IFP status is available to a person who declares to the Court, by way of affidavit, that he "cannot because of his poverty 'pay or give security for the costs ... and still be able to provide' himself and dependents 'with the necessities of life.'" *Id.*[2]

The grant of IFP status to a party carries with it several benefits, perhaps the most significant of which in practical terms is the waiver of the normal filing fees and other costs associated with federal litigation. Consequently, a district court is presented with, and ultimately decides, an IFP application at the commencement of the litigation, and while "[t]he allegations contained in the affidavit concerning the movant's financial status typically are accepted at face value ..., the court may inquire into such allegations and demand more specific information if necessary for a proper assessment of the movant's financial status." *Monti v. McKeon*, 600 F.Supp. 112, 113 (D.Conn.1984), *aff'd*, 788 F.2d 1 (2d Cir.1985) (Table).

■ IFP status, once granted, is not intended to be insulated from further consideration. As the Fourth Circuit has recognized:

> The use of the word "prepayment" in subsection (a) [of 28 U.S.C. § 1915] indicates that Congress did not intend to waive forever the payment of costs, but rather it intended to allow qualified litigants to proceed without having to advance the fees and costs associated with litigation.... It is clear that § 1915 contemplates the postponement of fees and costs for litigants who are granted [IFP] status.

*Flint v. Haynes*, 651 F.2d 970, 972 (4th Cir. 1981), *cert. denied*, 454 U.S. 1151, 102 S.Ct. 1018, 71 L.Ed.2d 306 (1982). Consistent with this statement, the Fourth Circuit has further recognized:

> In determining whether [a] plaintiff should be entitled to proceed to final resolution without prepayment of costs, [the] Court is not bound by [the] plaintiff's economic status on the date of filing. Rather, the Court should, if necessary, take into account all relevant changes in [the] plaintiff's financial condition, both prior to and subsequent to the filing of suit.

*Evans v. Croom*, 650 F.2d 521, 525 n. 12 (4th Cir.1981), *cert. denied*, 454 U.S. 1153, 102 S.Ct. 1023, 71 L.Ed.2d 309 (1982) (citation omitted). Therefore, as a general matter, district courts clearly have the authority to reconsider the grant of IFP status. Moreover, if a district court determines that "an allegation of poverty is no longer true because of a subsequent improvement in the economic status of a plaintiff, it is within the authority of the court to dismiss the proceeding or to require that the costs of the litigation to date be paid by [the] plaintiff in lieu of dismissal." *Prade v. Jackson & Kelly*, 941 F.Supp. 596, 597 n. 1 (N.D.W.Va.1996).[3]

---

**2.** The Supreme Court elaborated on this standard more recently in *Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 203, 113 S.Ct. 716, 722, 121 L.Ed.2d 656 (1993) (citation omitted), stating: "Poverty, in its primary sense, is a human condition, to be '[w]anting in material riches or goods; lacking in the comforts of life; needy.'"

**3.** *See also Treff v. Galetka*, 74 F.3d 191, 197 (10th Cir.1996) ("We hold that when a litigant's finan-

cial condition improves during the course of the litigation, the district court may require him or her to pay fees and costs"); *Wiideman v. Harper*, 754 F.Supp. 808, 809 (D.Nev.1990) ("this court may retroactively require [an IFP] plaintiff to pay fees and costs if his financial situation has improved"); *Holsey v. Bass*, 519 F.Supp. 395, 406 (D.Md.1981), *aff'd sub nom., Todd v. Baskerville*, 712 F.2d 70 (4th Cir.1983) ("If, at any time in the future, plaintiff's financial status improves,

■ The district judge to whom these cases were previously assigned granted Faltas' requests for IFP status in each of these cases.[4] Although these cases are now on appeal to the Fourth Circuit, the question of whether Faltas should be entitled to retain IFP status on appeal remains in the first instance with this Court. Rule 24(a) of the Federal Rules of Appellate Procedure expressly provides:

> A party who has been permitted to proceed in an action in the district court [IFP] ... may proceed on appeal [IFP] without further authorization unless, before or after the notice of appeal is filed, the district court ... shall find that the party is otherwise not entitled so to proceed....

The advisory committee notes to Rule 24 make clear that this portion of the rule "permit[s] an inquiry into whether the circumstances of the party who was originally entitled to proceed [IFP] have changed during the course of the litigation."

## II

■ As noted, the Court raised the issue of Faltas's retention of IFP status because of the number of legal proceedings in which she has been engaged during the pendency of these cases and the manner in which she has conducted her various litigation endeavors. At this juncture, the Court is not concerned with whether Faltas should have been granted IFP status in the first instance. That determination was made in her favor by another district judge and the Court will accept it for purposes of this Order. However, the Court's review and observation of these and other recent proceedings makes it abundantly clear that despite the fact that she has not

been recently employed, Faltas is by no means indigent within the meaning of the IFP statute.

For example, in these proceedings, as well as at least one other now before this Court, Faltas has waged an aggressive (and abusive) attack in which she has flooded the Court and opposing counsel with numerous legal filings, many of which contain multiple pages and/or exhibits. The amount of paperwork that Faltas has generated is somewhat staggering. Faltas' ability to produce this amount of paperwork while enjoying IFP status is certainly indicative of the fact that she has financial resources available to her to fund this litigation.

Moreover, Faltas has had at her disposal an automobile, a telephone, a telefax machine, and a computer, all of which she has used to assist her in litigating these cases. It is the Court's understanding, for example, that Faltas has used the automobile to travel not only to this courthouse on a regular basis, but she has also used it to travel out-of-town and out-of-state on numerous occasions for litigation purposes. It is also the Court's understanding that Faltas has made numerous long-distance phone calls related to her various litigation (*e.g.*, to the Fourth Circuit). While some may consider these items mere necessities in today's world, Faltas' use of them goes beyond that of an indigent person.

Faltas has not limited her recent litigiousness to this district. Within the last two years alone, for example, Faltas has (1) sought certiorari review by the United States Supreme Court, *see Fares v. I.N.S.,* —— U.S.

---

he must pay the filing fee for each and every suit he has initiated").

**4.** These cases were previously assigned to the Honorable Joseph F. Anderson, Jr. who, prompted by Faltas, recused himself from all cases involving her. These cases were then reassigned to the undersigned, who has never been presented with an IFP petition by Faltas. In C.A. No. 3:94–1578–19, Faltas and her mother, who was a co-plaintiff, paid a civil filing fee. Faltas later obtained IFP status for appellate purposes in that case. In the other three actions, Faltas obtained IFP status *ab initio* and, therefore, she did not

pay any filing fees in those cases. Notably, in C.A. Nos. 3:95–1521–19 and 3:96–180–19, Faltas did not complete the standard IFP application but, instead, filed a "motion for leave to proceed [IFP]." The information contained in the motions is not as detailed as that required by the standard IFP application. For example, while the standard form requires the applicant to list, *inter alia*, any money received over the prior 12 months as a result of gift, inheritance, or any other source, Faltas' motions fail to address these sources.

——, 116 S.Ct. 782, 133 L.Ed.2d 733 (1996) (Mem. op. denying cert.); (2) sought a writ of mandamus from the Fourth Circuit, *see In re Assa'Ad–Faltas,* 86 F.3d 1148 (Table) (4th Cir.1996) (denying petition); (3) pursued an appeal from the Eastern District of North Carolina before the Fourth Circuit, *see Assa'ad–Faltas v. Rogers,* 106 F.3d 389, 1997 WL 28528 (Table) (4th Cir.1997);[5] and (4) filed an action in the Western District of North Carolina. *See Fares v. U.S. I.N.S.,* C.A. No. 3:96–540–P (W.D.N.C.).[6] While Faltas is certainly entitled to pursue these actions, her ability to do so is entirely inconsistent with her alleged indigency.

As noted, the Court offered Faltas an opportunity to explain why she should retain IFP status. Faltas responded by filing an affidavit which reads in pertinent part:

1. I am the plaintiff in the above-captioned cases which are now on appeal to the Fourth Circuit.

2. I have reviewed the *i.f.p.* form used in U.S. Circuit Courts. My truthful answer to the questions thereon is that I am still unemployed and have not received income in the last year except that my mother lets me live in her apartment and use her car and equipment. She has not allowed me to use any of her limited savings to pay filing fees in cases where she is not a party; and I have no right to help myself to such money.

3. I cannot undertake the accounting this Court requested in its 19 March 1997 Order because I do not have complete records; because I do not think any out-of-town trip I took was exclusively to pursue litigation but combined several purposes at the same time; and because any money already spent on such trips and/or on typing, copying and mailing has already been spent. Accounting for it does not make it available again.

4. In 1987, I was allowed to proceed *i.f.p.* in the U.S. District Court, M.D.N.C., when I was unemployed. In 1988, I became employed and immediately informed that court on my initiative; but that court did not act on that information. Later, based on that very information, another set of appellees sought to revoke my *i.f.p.* status. The Eighth Circuit denied their motion but required me to inform the lower court should I receive funds from which the filing fee can be paid. I complied then. I have no such funds now; but am willing to be bound by a similar ruling in these cases; *i.e.,* if I receive funds from which the filing fee can be paid without jeopardizing my

---

**5.** The *Rogers* case is significant because not only was Faltas litigating it in the Eastern District of North Carolina during the time in which she claimed indigency here, but also because the Fourth Circuit's opinion indicates that Faltas was represented by an attorney—Orin Briggs—on appeal. While Briggs may have performed legal services for Faltas in that case without compensation, his representation of her certainly causes the Court some concern about her IFP status. Moreover, this is not the first time that Briggs has represented Faltas before the Fourth Circuit. *See Fares v. U.S. Immigration & Naturalization Service,* No. 94–1339, 1995 WL 115809 (4th Cir.1995) (Briggs listed as counsel for Fares and Faltas).

The *Rogers* case is also significant because of the unsolicited letter which Rogers sent to the Court on or about March 31. While this letter is certainly supportive of this Order, the Court does not base this decision on any matter contained therein because there is no need at this time to delve into the assertions made by Rogers. The Court does note, however, that Rogers has pointed to Faltas' sworn testimony in which she states, in response to a question concerning her sources of income, that she has "a very good family support system, and it's nothing unusual in [her] family for one of [them] to support the others when they are engaged in an academic or a creative endeavor that doesn't generate income." *See* Rogers Letter To The Court (March 31, 1997), at 2.

**6.** The *Fares* case which is now pending in the Western District of North Carolina deserves special comment for two reasons. First, the fact that a filing fee was paid in *Fares* indicates that a filing fee is available for the proceedings arising in this Court. While Faltas is not expressly listed as a plaintiff in *Fares*—the case is brought in the name of Fares on behalf of herself and a purported class—a review of the complaint leaves no doubt that Faltas is the potential prime (if not sole) beneficiary of that litigation. This is evident from the prayer for relief in that case. Second, and notwithstanding the foregoing, it clearly appears that the complaint in that case, which Fares signed *pro se,* is Faltas' work product.

subsistence, I will so inform the Fourth Circuit and/or this Court.

The Court was very specific about the need for Faltas to provide a detailed response, and it is quite obvious that she has not come close to meeting her burden.[7] Therefore, despite the Court's warning in the March 19 Order, Faltas has failed to show cause why her IFP status should not be revoked and why she should not be forced to pay filing fees retroactively.[8] Faltas' noncompliance alone could be a basis for revocation of her IFP status. *Cf. United States v. Davis,* 958 F.2d 47, 49 (4th Cir.1992) ("By blocking legitimate inquiry into his financial condition, a defendant impliedly waives his right to [appointed] counsel").

### III

In the *Monti* case cited above, the district court denied the plaintiff IFP status for purposes of her appeal. The record in *Monti* established that although the plaintiff claimed indigency, she was in fact supported financially by her spouse. 600 F.Supp. at 113–14. With this in mind, the *Monti* court stated:

Defendant correctly notes that in ruling on motions to proceed [IFP], other courts

have considered the income of interested persons, such as spouses and parents, in evaluating the funds available to the movant.

The purpose of 28 U.S.C. § 1915 is to ensure that litigants will not be deprived of access to the judicial system because of their financial circumstances. If the plaintiff is financially supported by her spouse, and her spouse is financially able to pay costs of this appeal, it follows that the plaintiff's own lack of funds will not prevent her from gaining access to the courts. Where funds to pursue an appeal are readily available to a plaintiff, she should not be permitted to maintain an appeal at the taxpayers' expense.

600 F.Supp. at 114 (citations omitted).[9]

The rationale of *Monti* is applicable here. It is apparent from the record that although Faltas has been unemployed for several years, she has been supported by her mother and, perhaps, other family members. While Faltas has refused to detail the amount of this support, it obviously has not been insignificant. Thus, by claiming indigent status, Faltas has entered the federal litigation arena and avoided payment of the normal fees and costs that most litigants must absorb. Upon obtaining this "free ride," Faltas has unleashed an aggressive assault on her op-

---

7. The Court specifically set forth the information which Faltas was to supply in her response, and warned her that her failure to comply would result in revocation of her IFP status. The Court indicated that it wanted to know how Faltas has been able to fund her litigious activities, and instructed her to explain, for the last three years: the source of funds that she uses to make copies of pleadings, documents, or exhibits; what type of computer and/or telefax equipment she has used; whether she has used computer-assisted legal research and, if so, whether she paid for such use; whether she has taken any out-of-town trips to pursue, in any manner, any litigation and, if so, the number of said trips, the destination of each trip, and the source of funds for each trip; how much she has spent in postage mailing legal materials in or out of this district; and whether she has paid attorney Briggs or any other attorney any money to assist her in any capacity in her legal actions. While Faltas may not, as she states, have "complete" records to prepare a proper response, she was under an obligation to utilize whatever records and/or memory that she has in order to respond in as detailed a manner as possible.

8. Faltas states that she does not believe that her out-of-town trips were "exclusively to pursue litigation," and that "any money already spent on such trips and/or on typing, copying and mailing has already been spent." Faltas thus admits that she has had access to funds for purposes of litigation. Moreover, Faltas' statement that her mother has not allowed her "to use any of her limited savings to pay filing fees in cases where she [the mother] is not a party" at best begs the critical question because the Court is not concerned with whether Faltas' mother has allowed her to use her money to pay the filing fees; rather, the Court's concern is whether her mother has allowed her to use her money to fund her litigation activities. Interestingly, Faltas has indicated in documents filed with the Court that she has a power of attorney for her mother.

9. Other courts have recognized that in making an IFP determination it is proper to consider whether the party claiming indigent status receives financial support from her family. *See, e.g., Sellers v. United States,* 881 F.2d 1061, 1063 (11th Cir.1989); *Williams v. Estelle,* 681 F.2d 946, 947 (5th Cir.1982).

posing parties, their counsel, and the Court, and in doing so, she has unquestionably had access to, and has utilized, significant financial resources to fund her litigation here and in other jurisdictions. Notably, Faltas does not deny this fact.[10]

To be sure, Faltas' financial situation may not have technically "changed" since she received IFP status in these cases. That is, Faltas may have been relying upon her family's monetary support when she instituted these actions. Nevertheless, the Court—accepting Faltas' IFP applications—could not have known the extent of resources that she would have available to her. The undersigned, not having been involved at the time the IFP applications were granted, certainly was unaware of this fact. But now that the Court has observed, and Faltas has essentially admitted, that she has the financial ability to support her litigation without suffering any hardship, the Court cannot stand by and turn a blind eye while she takes advantage of the IFP system. After all:

> Litigation is not a free good, and its costs are not limited to those who initiate it. They are borne not only by the plaintiff but by the defendant, by the taxpayer, and by parties to other lawsuits in the same court, whose cases may be delayed or who may receive less attention from the judges than if the caseload were lighter.

*Lumbert v. Illinois Dept. of Corr.*, 827 F.2d 257, 259 (7th Cir.1987).

The Fourth Circuit recently noted that "the explosion of IFP litigation presents problems for our legal system." *Roller v. Gunn*, 107 F.3d 227, 230 (4th Cir.1997). Because it is "[a] part of the Court's responsibility is to see that resources are allocated in a way that promotes the interests of justice," *In re McDonald*, 489 U.S. 180, 184, 109 S.Ct. 993, 996, 103 L.Ed.2d 158 (1989), the Court has given considerable attention to the matters addressed herein. The conclusion is inescapable that allowing Faltas to proceed IFP and without bearing her fair share of the litigation costs—*e.g.*, filing fees—clearly does not promote the interests of justice but, instead, contributes to the problems in our legal system that are associated with IFP litigation.

### IV

Based on the foregoing, the Court hereby **ORDERS** on this the 15th day of April, 1997, at Columbia, South Carolina, that Faltas' IFP status in the above-captioned cases be **REVOKED.**[11] The Court further **RECOMMENDS** that these actions be dismissed in their entirety by the Fourth Circuit unless Faltas pays the civil and appellate filing fees.[12] The Court directs the Clerk of this Court to forward a copy of this Order immediately upon filing to the Clerk for the Fourth Circuit.[13]

10. Over 30 years ago one district court made the following observation which certainly rings true in these cases:

> One naturally, though probably not invariably or inevitably, thinks of the grant of leave to proceed [IFP] ... as a benevolent device wherewith to minimize the burden of litigation thrust upon a reluctant participant in it. But that is not the pattern which emerges from the instant request. What is here sought possesses the connotations of the arming of an aggressor. That supposition is not eliminated by the applicant's subjective certainty of the worthiness of his cause. A litigant rarely appraises his position in controversy by objective standards. It appears all too certain that the court is being implored to provide not a shield but a sword.

*Rhodes v. Houston*, 258 F.Supp. 546, 581 (D.Neb. 1966), *aff'd*, 418 F.2d 1309 (8th Cir.1969), *cert. denied*, 397 U.S. 1049, 90 S.Ct. 1382, 25 L.Ed.2d 662 (1970).

11. The Court has previously expressed concern over the fact that Faltas appears to be engaging in the unauthorized practice of law on behalf of her mother. The Court is also concerned with the veracity of Faltas' August 15, 1996, IFP application in C.A. No. 3:94–1578–19, in which she stated under oath that she had not received money from any gift, inheritance, or other source. While Faltas did note that her "mother pays the rent and utilities in her apartment where [she] live[s]," that statement does not detail the apparent additional financial support that is, and has been, available to Faltas.

12. While this Court has the authority to revoke Faltas' IFP status, *see* Fed. R.App. P. 24(a), it likely does not have the authority to order the dismissal of her appeals.

13. Although such a finding may be warranted, the Court is not at this time basing this decision on whether Faltas is pursuing these appeals in bad faith. *See* Fed. R.App. P. 24(a).