777 S.E.2d 398

**The STATE, Respondent,**

**v.**

**Lamont Antonio SAMUEL, Appellant.**

**Appellate Case No. 2013–001342.**
**No. 5346.**

Court of Appeals of South Carolina.

Heard Feb. 12, 2015.
Decided Aug. 26, 2015.
Rehearing Denied Oct. 23, 2015.

Chief Appellate Defender, Robert M. Pachak, of Columbia, for appellant.

Attorney General, Alan McCrory Wilson, Chief Deputy Attorney General, John W. McIntosh, Senior Assistant Deputy Attorney General, Donald J. Zelenka, Senior Assistant Attorney General, W. Edgar Salter, III, all of Columbia; and Solicitor David Michael Pascoe, Jr., of Orangeburg, for respondent.

HUFF, J.

Lamont Antonio Samuel appeals his conviction for murder, arguing the trial judge erred in refusing to allow him to represent himself. We affirm.

## FACTUAL/PROCEDURAL HISTORY

Samuel, who was indicted for the murder of Taneris Hamilton, was provided appointed counsel. Prior to trial, Samuel moved to represent himself. The trial judge conducted a hearing to consider the motion. Samuel explained he wanted to represent himself because he had been in jail for fourteen months despite maintaining his innocence. He complained his appointed counsel would not let him contact the solicitor on the case and bring the solicitor a letter Samuel's codefendant had written in which the co-defendant confessed. Samuel asserted he understood he was charged with murder and the maximum sentence the charge carries. He stated he was twenty-one years old and graduated from high school in 2010 with a 4.0 in honors classes. He claimed he was enlisted and waiting to go into the Navy. He declared while he was waiting, he worked with the recruiting office at Fort Jackson.

Samuel testified he had been reading a book entitled *Criminal Law Handbook*, which his mother helped him obtain at the recommendation of attorney Carl Grant. He also claimed Grant had coached him on the South Carolina Rules of Evidence. Samuel acknowledged Grant was not representing him but maintained the attorney was going to coach him. He explained:

> [M]y mama, basically paid Mr. Grant a good bit amount of money. The reason why he couldn't represent me is because my family—I guess his paralegal is related, you know, in some manner. So he had decided to just go over the steps with me day by day. I go through the trial, I got back to him. I talk to him, he'll tell me things or he won't— he's not going to be in the courtroom, present.

After completing the *Faretta*[1] colloquy, the trial judge noted Samuel was bright, educated, and did not have drug, alcohol,

---

1. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

or mental health problems. She acknowledged to Samuel: "You don't have a problem that I'm aware of that I can use, in all candor, to keep you from representing yourself." The judge then summoned Grant to come to the courtroom to explain his relationship with Samuel.

Grant testified he had not been retained to represent Samuel. He explained the only discussion he had with Samuel's mother pertained to the legal fees to represent Samuel but the mother never brought him the fees. He maintained he had not given Samuel a copy of the rules of evidence or of criminal procedure or offered his assistance in any way. He stated: "Either you're going to retain me to represent you or you're not." He informed the judge he would not be available to provide Samuel with any assistance in any capacity if Samuel represented himself.

Samuel thanked Grant "for your information you provided me. I thank you for your advice and everything. . . ." When the judge asked him what advice and information he meant, Samuel responded: "Everything he said." The judge further questioned Samuel if he meant what was said that day. Samuel stated: "I'm just saying in general. Everything he said makes a whole lot of sense." Samuel acknowledged he understood the extent of Grant's relationship and he could not depend on Grant's assistance. However, after Grant left the courtroom, Samuel claimed the reason Grant testified as he did was because of the kinship between Grant's paralegal and Samuel and Grant's "reputation was on the line." Samuel explained the reason his expression did not change during Grant's testimony was "because he already had told me and stated if it came down to him coming in front of a judge in front of the attorneys he was going to state that."

After taking a brief recess, the trial judge informed Samuel she did not believe what Samuel had told her concerning his relationship with Grant and Grant's willingness to coach him. She ruled: "The reason that I am disallowing your self-representation is because it is impossible for me to [try] a case if I do not have candor from those who are making representations to the court." Even after the judge made the ruling, Samuel continued to claim Grant said what he did because "he did not want his reputation ruined."

After delays unrelated to Samuel's request for self-representation, the case proceeded to trial with appointed counsel representing Samuel. The jury found Samuel guilty of murder. The trial judge sentenced him to fifty years imprisonment. This appeal followed.

## ISSUE

Did the trial judge err by refusing to allow Samuel to represent himself?

## STANDARD OF REVIEW

"The question of whether court appointed counsel should be discharged is a matter addressed to the discretion of the trial judge. Only in a case of abuse of discretion will this [c]ourt interfere." *State v. Sims,* 304 S.C. 409, 414, 405 S.E.2d 377, 380 (1991); *see State v. Barnes,* 407 S.C. 27, 48, 753 S.E.2d 545, 556 (2014) (Toal, C.J., dissenting) (applying abuse of discretion standard to review of denial of motion for self-representation). An abuse of discretion occurs when the decision of the trial judge is based upon an error of law or upon factual findings that are without evidentiary support. *State v. Pagan,* 369 S.C. 201, 208, 631 S.E.2d 262, 265 (2006).

## LAW/ANALYSIS

Samuel argues the trial judge erred in refusing to allow him to represent himself. We disagree.

A defendant has a constitutional right to self-representation under the Sixth and Fourteenth Amendments. *Faretta v. California,* 422 U.S. 806, 807, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). However, the right of self-representation is not absolute. *United States v. Frazier–El,* 204 F.3d 553, 559 (4th Cir.2000). The Supreme Court in *Faretta* noted "the trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct." *Faretta,* 422 U.S. at 834 n. 46, 95 S.Ct. 2525. It explained: "The right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law." *Id.* "Even at the trial level . . . the government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own

lawyer." *Martinez v. Court of Appeal of Cal., Fourth Appellate Dist.*, 528 U.S. 152, 162, 120 S.Ct. 684, 145 L.Ed.2d 597 (2000).

A defendant's assertion of his right to self-representation must be: "(1) clear and unequivocal; (2) knowing, intelligent and voluntary; and (3) timely." *Frazier–El*, 204 F.3d at 558 (citations omitted). The right of self-representation does not exist to be used as a tactic for delay, for disruption, for distortion of the system, or for manipulation of the trial process. *Id.* at 560. A trial judge may refuse to permit a criminal defendant to represent himself when he is " 'not able and willing to abide by rules of procedure and courtroom protocol.' " *United States v. Lopez–Osuna*, 242 F.3d 1191, 1200 (9th Cir.2001) (quoting *Savage v. Estelle*, 924 F.2d 1459, 1463 (9th Cir.1991)). "A trial court must be permitted to distinguish between a manipulative effort to present particular arguments and a sincere desire to dispense with the benefits of counsel." *Frazier–El*, 204 F.3d at 560.

In *United States v. West*, 877 F.2d 281, 287 (4th Cir.1989), the Fourth Circuit held a trial court was not required to make a finding the defendant disrupted a trial to support its removal of him as pro se counsel. It found the defendant "directly attacked the [trial] court's integrity and dignity by characterizing it as the 'home team' on the side of the government and accusing it of imposing upon him a presumption of guilt." *Id.* The Fourth Circuit explained, "By asserting his right of self-representation, [the defendant] assumed the responsibility of acting in a manner befitting an officer of the court. By flouting the responsibility, he forfeited the right." *Id.*

As the Fourth Circuit recognized in *West*, a defendant like Samuel who chooses self-representation assumes the responsibility of acting as an officer of the court. *See id.* This responsibility includes displaying candor toward the court. *See* Rule 3.3(a)(1), RPC, Rule 407, SCACR (stating a lawyer shall not knowingly "make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer"). The trial judge considered Samuel's and Grant's conflicting testimony concerning Grant's alleged assistance for Samuel's trial and found Samuel not credible. It was within the province of the

trial judge, as the fact-finder in the *Faretta* hearing, to weigh the credibility of the witnesses. *See State v. Dorce*, 320 S.C. 480, 483, 465 S.E.2d 772, 773 (Ct.App.1995) ("The trial judge was presented with contradicting testimony, and it was within his province, as the trier of fact, to weigh the credibility of the evidence presented to determine which witnesses he deemed credible."). As the record supports the trial judge's determination Samuel displayed an unwillingness to act as an officer of the court through his lack of candor, we find the trial judge did not abuse her discretion in denying his request to represent himself.

**AFFIRMED.**

FEW, C.J., and WILLIAMS, J., concur.