282

797 S.E.2d 730

The STATE, Respondent,

v.

Rickey MAZIQUE, Appellant.

Appellate Case No. 2012–213631
Opinion No. 5446

Court of Appeals of South Carolina.

Heard January 4, 2016
Filed October 19, 2016
Rehearing Denied April 17, 2017

J. Falkner Wilkes, of Greenville, for Appellant.

Attorney General Alan McCrory Wilson and Senior Assistant Attorney General David A. Spencer, both of Columbia, and Solicitor Jimmy A. Richardson, II, of Conway, for Respondent.

SHORT, J.:

Rickey Mazique appeals from his conviction for armed robbery, arguing the trial court erred in: (1) not conducting a timely and adequate inquiry as to his motion for the appointment of substitute counsel; (2) denying him the right to self-representation at a critical stage of the proceedings; (3) allowing the State to take advantage of him with its prejudicial and inflammatory comments to the jury; (4) denying his request to require the State to offer the entire audio of his police interview; (5) refusing to require the State to provide him a copy of the officer's handwritten notes for cross-examination; (6) denying him the right to effective cross-examination of officers; (7) refusing to allow him to cross-examine a witness about any pending charges to examine for bias, motive, etc.; and (8) the cumulative effect of all the foregoing errors prevented him from having a fair trial. We affirm.

## FACTS

A man wearing a wig robbed a Kangaroo convenience store; however, the store clerk recognized the robber because he regularly visited the store. The clerk did not know Mazique's name, but she later picked him out of a photographic lineup. The surveillance video shows the robber stuffing cigarettes into a trash bag.

The responding officer's investigation led him to Mazique's residence where Mazique's girlfriend consented to a search of the home. The officers found a trash bag full of cartons of cigarettes in a closet and a box of ammunition inside an air vent above the kitchen counter. The officers also found a jacket similar to the one the robber wore in the surveillance video from the convenience store. At the police station, Mazique gave two tape-recorded statements. Mazique admitted to robbing the convenience store. He also admitted to using a gun, which he threw away, and to hiding the ammunition in his kitchen.

A pre-trial hearing was held on November 8, 2012. During the hearing, Mazique told the court he wanted a new attorney. After hearing Mazique's complaints about his attorney, the court declined to rule on the request until the day of trial and ordered his attorney to represent him at trial unless Mazique chose to represent himself. The trial was held on November

15–16, 2012. Mazique was represented initially by Melinda A. Knowles at the pre-trial hearing and by Knowles and James C. Galmore at the start of his trial. On the day of the trial and prior to the selection of the jury, Mazique requested to represent himself. The court advised him of the dangers of representing himself in an armed robbery case, and Mazique responded that his two attorneys were "not an option" and he was "forced" to represent himself. Mazique proceeded throughout the trial and sentencing self-represented. The jury found him guilty of armed robbery and the court sentenced him to twenty-five years' incarceration. This appeal followed.[1]

## STANDARD OF REVIEW

In criminal cases, this court sits to review errors of law only, and is bound by the trial court's factual findings unless those findings are clearly erroneous. *State v. Edwards*, 384 S.C. 504, 508, 682 S.E.2d 820, 822 (2009). Thus, on review, the court is limited to determining whether the trial court abused its discretion. *Id.* An abuse of discretion occurs when the court's decision is unsupported by the evidence or controlled by an error of law. *State v. Black*, 400 S.C. 10, 16, 732 S.E.2d 880, 884 (2012). The appellate court "does not re-evaluate the facts based on its own view of the preponderance of the evidence but simply determines whether the trial court's ruling is supported by any evidence." *Edwards*, 384 S.C. at 508, 682 S.E.2d at 822.

## LAW/ANALYSIS

### I. Appointment of Counsel

Mazique argues the trial court erred in not conducting a timely and adequate inquiry as to his motion for the appointment of substitute counsel. We disagree.

The question of whether an appellant's court appointed counsel should be discharged is a matter addressed to the discretion of the trial judge, and this court will not interfere absent an abuse of such discretion. *State v. Graddick*, 345 S.C. 383, 385, 548 S.E.2d 210, 211 (2001). The "[a]ppellant bears the burden to show [a] satisfactory cause for removal." *Id.* at 386, 548 S.E.2d at 211.

---

1. J. Falkner Wilkes substituted as counsel prior to the briefing of this appeal and represents him in this appeal.

In *Graddick*, our Supreme Court held the trial court did not abuse its discretion in refusing to grant Graddick's request for new counsel four days before the start of his trial for murder when he made only the most conclusory arguments as to why his counsel should have been relieved, including: "[My attorney] is not representing my interests and is not fully prepared for this case. I do not feel comfortable going to court with him as my lawyer." *Id.*

During the pre-trial hearing on November 8, Mazique told the court he wanted another attorney appointed: "I'm not qualified to go *pro se*; I just want another attorney." The court allowed Mazique to expound on why he was unhappy with his attorney. First, he stated his attorney waived his rights to his preliminary hearing without his consent. The court explained to Mazique that the Grand Jury true billed his indictment and he was not entitled to a preliminary hearing.

Second, Mazique stated his attorney knew the solicitor was in possession of exculpatory evidence, an alleged altered tape recording of his statement to police, and she would not file a pre-trial motion to obtain the evidence. The State asserted it turned over all the recordings to Mazique and there was no alteration of the recordings. Mazique then stated he wanted the recording device and the officer's hard drive. Mazique's attorney stated she filed the motion to receive the evidence Mazique requested and the State replied it did not have access to the recording machine. The court then explained to Mazique that he was not entitled to the actual recording device, just the original recording, and the recording's authenticity would be questioned at trial.

Third, Mazique stated the arresting officer committed perjury by changing his indictment from committing an armed robbery with a box of ammunition to committing an armed robbery with a firearm. The State responded that the arrest warrant and the indictment both stated Mazique committed armed robbery. The State explained he was also charged with possession of bullets as a federally convicted felon; however, the State was only going forward on the armed robbery. The court explained the indictment for armed robbery was true billed and he was going to trial on the exact language contained in the indictment.

Fourth, Mazique asserted he had been asking his attorney to file a motion for the production of the cigarettes so he could have his own independent tests done on them. The State responded the police found forty to sixty cartons of cigarettes in Mazique's house and after photographing them, the State returned the cigarettes to the store. Mazique told the court he had two other pending strong-armed robberies where he stole cigarettes and he had the right to determine if the cigarettes were from this robbery or another one. The court found it was sufficient that the State had video of Mazique in the store with a gun, taking Newport cigarettes and putting them in a plastic bag; statements from Mazique; a positive identification from the witness at the store; and cartons of cigarettes at his residence.

Next, Mazique told the court he would not move forward with his attorney because he did not trust her and there was no "line of communication." The court told Mazique he had three options: go to trial the next week with his current attorney; hire his own attorney; or represent himself. The court stated Mazique was entitled to a lawyer, but not the lawyer of his choice, and his current attorney was an excellent lawyer. Mazique responded, "If you compel me to [be] my own la[w]yer, I'll be my own lawyer. I don't want her representing me." The court told Knowles that, "If on the morning of the trial, he tells me under oath before this Court Reporter, that he wants to represent himself, I'm gonna let him do that. Otherwise, you're gonna represent him." The court then held a *Jackson v. Denno*[2] hearing with Knowles representing Mazique against his objections.

■ On appeal, Mazique argues the trial court "indicated that it would listen to [his] grounds but then cut [him] off before he finished" and the court "never conducted a proper inquiry into the basis for [his] motion to have new counsel appointed." Further, he asserts "the trial court's failure to conduct a through [sic] inquiry resulted in a lack of record for this Court to affirm the trial court's denial of [his] motion." We find the court listened to Mazique's complaints about his attorney and found them to not be a satisfactory cause for removal; therefore, the trial court did not abuse its discretion

---

2. 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

in declining to appoint Mazique new counsel seven days before his trial.

## II. Right to Self–Representation

Mazique argues the trial court erred in denying him the right to self-representation at a critical stage of the proceedings. We disagree.

 "A South Carolina criminal defendant has the constitutional right to represent himself under both the federal and state constitutions." *State v. Barnes*, 407 S.C. 27, 35, 753 S.E.2d 545, 550 (2014). "The request to proceed *pro se* must be clearly asserted by the defendant prior to trial." *State v. Fuller*, 337 S.C. 236, 241, 523 S.E.2d 168, 170 (1999). An accused is allowed to waive his right to counsel if he is (1) advised of his right to counsel, and (2) adequately warned of the dangers of self-representation. *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

> To determine if an accused has sufficient background to comprehend the dangers of self-representation, courts consider a variety of factors including: (1) the accused's age, educational background, and physical and mental health; (2) whether the accused was previously involved in criminal trials; (3) whether the accused knew the nature of the charge(s) and of the possible penalties; (4) whether the accused was represented by counsel before trial and whether that attorney explained to him the dangers of self-representation; (5) whether the accused was attempting to delay or manipulate the proceedings; (6) whether the court appointed stand-by counsel; (7) whether the accused knew he would be required to comply with the rules of procedure at trial; (8) whether the accused knew of the legal challenges he could raise in defense to the charge(s) against him; (9) whether the exchange between the accused and the court consisted merely of pro forma answers to pro forma questions; and (10) whether the accused's waiver resulted from either coercion or mistreatment.

*In re Christopher H.*, 359 S.C. 161, 167–68, 596 S.E.2d 500, 504 (Ct. App. 2004). "At bottom, the *Faretta* right to self-representation is not absolute, and 'the government's interest in ensuring the integrity and efficiency of the trial at times outweighs

the defendant's interest in acting as his own lawyer.'" *United States v. Frazier–El*, 204 F.3d 553, 559 (4th Cir. 2000) (quoting *Martinez v. Court of Appeal of Cal.*, 528 U.S. 152, 162, 120 S.Ct. 684, 145 L.Ed.2d 597 (2000)).

 "[A]fter [a] trial has begun, a mere disagreement between a defendant and his counsel as to a matter of trial tactics is not sufficient cause, in itself, to require the trial court to replace or to offer to replace court appointed counsel with another attorney at that time." *State v. Jones*, 270 S.C. 587, 588, 243 S.E.2d 461, 462 (1978). "The question of whether court appointed counsel should be discharged is a matter addressed to the discretion of the trial judge. Only in a case of abuse of discretion will this [c]ourt interfere." *State v. Samuel*, 414 S.C. 206, 211, 777 S.E.2d 398, 401 (Ct. App. 2015) (quoting *State v. Sims*, 304 S.C. 409, 414, 405 S.E.2d 377, 380 (1991)). "An abuse of discretion occurs when the decision of the trial [court] is based upon an error of law or upon factual findings that are without evidentiary support." *Id.* "The right of self-representation does not exist to be used as a tactic for delay, for disruption, for distortion of the system, or for manipulation of the trial process." *Id.* at 212, 777 S.E.2d at 401. "A trial court must be permitted to distinguish between a manipulative effort to present particular arguments and a sincere desire to dispense with the benefits of counsel." *Id.* (quoting *Frazier–El*, 204 F.3d at 560).

At the pre-trial hearing, Mazique told the court he wanted a new attorney and he did not want to proceed Pro Se: "I'm not qualified to go Pro Se; I just want another attorney." The court responded, "on many occasions folks who are set for trial on serious charges, the way you are, first thing they do to try and dodge it is throw off on the lawyer, want a new lawyer." Mazique told the court: "If you compel me to [be] my own [lawyer], I'll be my own lawyer. I don't want her representing me." He continued, "And for the record, Your Honor, I'm not insisting that I represent myself but I'm ... also bringing it to the Court's attention the ineffectiveness of my lawyer ..." The court told Knowles, "to excuse you to continue the trial would be to fall right into his trap of trying to get a continuance and I'm not going to give it to him" and "I've heard this so many times he just don't want to go to trial." Mazique stated: "Well, I'll represent myself, I don't want you

representing me. I'll represent myself; she not representing me." Knowles then stated: "Your Honor, you said a moment ago that you would only remove me if he said on the record to you that he did not want me and he wanted to represent himself." The court responded: "No, sir, he didn't—I haven't heard him say that." Mazique then told the court: "I represent myself but I'm forced to do it. I'm gonna represent myself. I don't want this lawyer." The court responded to Knowles, "[A]fter he thinks about it over the weekend and after we've had these motions, I'll entertain it later." Mazique stated, "It's apparent that she's not objecting to that then I'll file these right now. If I have to represent myself, I will, I'm prepared to." Knowles told the court he has a right to represent himself if he wants. The State added:

> [I]f the court is going to allow [Mazique] to represent himself, the State would ask that, respectfully, that you go through the protracted list of advising him of all his rights and whether he's waiving them and giving them up and whether he actually wants to go Pro Se. He's said multiple times he doesn't want to go Pro Se.

Knowles stated, "He just said outright he wanted to represent himself." The court responded to Knowles: "I'm gonna leave you in this case during this *Jackson v. Denno*; it's a very legal matter and he needs representation. At the appropriate time, if he wants to represent himself, I'll deal with it. I'm not gonna deal with it until this *Jackson v. Denno* hearing is over."

During the remainder of the *Jackson v. Denno* hearing, Mazique repeatedly stated he would represent himself. The court told Knowles to continue to represent him until trial. Mazique responded, "What about now, Your Honor? I'm telling you now that I want to represent my—this is pretrial." The court stated: "I'm not going to do that now. I want him to have a lawyer under these technical issues." Towards the end of the hearing, the court told Mazique:

> If on the morning of the trial—I just want you to have her preparation for the next week, in fairness to you. If on the morning of the trial, after examination, you tell me that you want to represent yourself, I'm gonna give you that opportunity. But in fairness to you, I want her to at least prepare for trial and turn over her trial material to you. I'm trying to help you if you'll let me.

Mazique responded: "Your Honor, and I'm asking you, you say you're trying to help me and I'm telling—I'm explaining to you, I understand the law. I understand that the pretrial proceeding is the most important part of the trial." The court did not respond. After Mazique was removed from the courtroom for talking when he was instructed not to, Knowles repeated to the court that Mazique had the right to represent himself if he chooses. The court responded:

He does, clearly. But he hasn't really said that yet and I wanted you to stay here for these legal motions that he's not competent to handle. But it's obvious to me and should be to everybody in the courtroom what he's trying to do and we can't be a party to that.

At the start of trial, Mazique again asserted he wanted to represent himself. The court gave Mazique warnings about self-representation and asked him about his age, educational background, and knowledge of the law. After allowing Mazique to raise multiple motions to the court, the court again addressed Mazique's motion to represent himself. The court advised Mazique: "I would urge you, ... as strong as I can given the dangers of representing yourself, to let these two distinguished attorneys with more than twenty years of experience represent you in this case." The court continued:

I have this decision to make, you are faced with a serious serious charge. You read some books but you are not qualified as a lawyer. You don't know the law of evidence. You don't know the law of hearsay. You don't know what's admissible and what's not admissible. Those are numerous things that you can't possibly know as a layman and for you to attempt to represent yourself in an armed robbery case is pure folly, however, the only thing the law requires me to do is make sure that it's your decision knowing the dangers of it and I would urge you to let these lawyers represent you in the trial of this case. Now having said that if you say, ["]I knowing the dangers wish to represent myself[,"] I'm going to let you do it but they will not be available to you in the trial; now do you understand that?

Mazique responded: "Yes sir, I understand that." The court asked Mazique to answer the question, "knowing that they will not be available to you in the trial of the case, knowing the danger of representing yourself, is it your intention to represent yourself or to have these lawyers help with trial?"

Mazique finally responded: "No, I don't, I'll represent myself, I'm forced to, I will represent myself." The trial proceeded with Mazique representing himself.

■ On appeal, Mazique argues the court erred by not conducting a *Faretta* hearing during the *Jackson v. Denno* hearing when Mazique told the court he wanted to represent himself. He asserts that once the court conducted the proper inquiry during the trial, the court found Mazique capable of representing himself; thus, there was no basis to deny his right to self-representation at the pretrial stage. Mazique asserts the denial of his requests to represent himself require a reversal of his conviction. Although Mazique told the court he no longer wanted his attorney to represent him, he was equivocal about whether he wanted to represent himself. Because the request to proceed *pro se* must be clearly asserted by the defendant, we find no error in the court's initial denial to dismiss Mazique's counsel during the pretrial hearing. *See Fuller*, 337 S.C. at 241, 523 S.E.2d at 170.

■ Further, Mazique argues that during the jury selection, he was denied the right to self-representation when his stand-by counsel responded to the court's question asking whether there were any objections to the selection of the jury; whereby waiving his ability to make a *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), motion. At the beginning of trial, the court allowed Mazique to represent himself, and Mazique conducted the jury selection process. Once the jury was selected, the court asked the State if it had any motions. The State replied it did not. The court then asked if the defense had any motions. Galmore responded, "No, sir." Mazique did not say anything. After lunch, Mazique told the court he wanted to make a *Batson* motion. The court then told Mazique he could not make the motion because the defense did not object after the jury selection. If Mazique had an objection to the jury selection, he could have said so after Galmore responded to the court's question. Therefore, we find no error in the court's denial of his motion.

## III. Comments to Jury

Mazique argues the trial court erred in allowing the State to take advantage of him with its prejudicial and inflammatory comments to the jury. We disagree.

 "A solicitor's closing argument must not appeal to the personal biases of the jurors nor be calculated to arouse the jurors' passions or prejudices, and its content should stay within the record and reasonable inferences to it." *Humphries v. State*, 351 S.C. 362, 373, 570 S.E.2d 160, 166 (2002). "[I]mproper comments do not require reversal if they are not prejudicial to the defendant." *State v. Rudd*, 355 S.C. 543, 550, 586 S.E.2d 153, 157 (Ct. App. 2003). "On appeal, an appellate court will review the alleged impropriety of the solicitor's argument in the context of the entire record, including whether the trial judge's instructions adequately cured the improper argument and whether there is overwhelming evidence of the defendant's guilt." *Id.*

Mazique did not object to the State's comments at trial. However, while the general rule is the lack of a contemporaneous objection to an improper argument acts as a waiver, our supreme court has held that "even in the absence of a contemporaneous objection, a new trial motion should be granted in flagrant cases where a vicious, inflammatory argument results in clear prejudice." *Toyota of Florence, Inc. v. Lynch*, 314 S.C. 257, 263, 442 S.E.2d 611, 615 (1994).

 On appeal, Mazique argues the State repeatedly made flagrant and inflammatory comments to the jury. First, he asserts the solicitor told the jury he believed Mazique was guilty. Second, Mazique argues the solicitor put into issue the credibility of his girlfriend's testimony about her consent to search the house and argued facts not in the record by telling the jury how much a carton of Newport cigarettes cost.

 We find the solicitor's comments referring to his belief that Mazique was guilty were in response to Mazique's closing argument to the jury that the solicitor had an obligation to investigate before charging and that the solicitor mislead the jury. *See Vaughn v. State*, 362 S.C. 163, 169, 607 S.E.2d 72, 75 (2004) ("Conduct that would otherwise be improper may be excused under the 'invited reply' doctrine if the prosecutor's conduct was an appropriate response to statements or arguments made by the defense."). The question of whether Mazique's girlfriend consented to the search of the home was an issue for the court, not the jury. Thus, although the comment was improper, we find it was not prejudicial to

Mazique. Also, the value of the stolen cigarettes was not an element of the crime or vital to the evidence in the case; thus, the comment was not prejudicial to Mazique. We further find the solicitor's brief comments do not rise to "extraordinary circumstances" that would excuse the failure to make a contemporaneous objection. *See Toyota of Florence, Inc. v. Lynch,* 314 S.C. 257, 263, 442 S.E.2d 611, 615 (1994) (holding that "even in the absence of a contemporaneous objection, a new trial motion should be granted in flagrant cases where a vicious, inflammatory argument results in clear prejudice."). Mazique finally argues this is a novel issue because "this case involves an obvious attempt by the solicitor to take advantage of the self-represented defendant." Therefore, he asserts the State should not be allowed to raise his failure to object to its improper statements as a defense. We do not find this is a novel issue, and Mazique chose to represent himself at trial. *See Barnes,* 407 S.C. at 31, 753 S.E.2d at 547 ("Appellant [who moved to be allowed to proceed *pro se*] acknowledged he understood he would be held to the same standards as an attorney regarding the rules of court and of evidence.").

## IV. Audio of Police Interview

Mazique argues the trial court erred in denying his request to require the State to offer the entire audio of his police interview. We disagree.

At trial, the State played for the jury a shortened version of the audio tape from his interview with the police. Mazique objected to the introduction of only a portion of the interview, requesting the whole interview be played for the jury. The State asserted it left out the parts of the recording mentioning other crimes and the investigation of other crimes.

On appeal, Mazique argues he was entitled to play the audio tape pursuant to Rule 106, SCRE. Rule 106 provides:

When a writing, or recorded statement, or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

He argues the trial court erred in allowing the State to offer only a portion of the interview, which "forced [him] to intro-

duce" the entire audio tape that had been redacted over his objection in the State's case. He argues the court improperly forced him into choosing between introducing evidence he thought was important or losing the right to the last argument. He maintains the court knew he did not plan to testify and there were no other witnesses, but he had to recall Detective Chatfield to examine him about the portion of the audio the State did not play for the jury and Officer Brian Scales to question him about portions of the store surveillance and in-car video. This resulted in him losing the last argument. He asserts this was error because had he been allowed to argue last, he could have more adequately addressed the improper issues raised by the State in its closing argument. Thus, he asserts the loss of last argument was not harmless beyond a reasonable doubt.

During the *Jackson v. Denno* hearing, the trial court redacted all parts of the police interviews that were prejudicial to Mazique, and Mazique did not object. Because the audio tapes were redacted for Mazique's benefit, we find the court did not err in allowing the State to play only the redacted portions not prejudicial to Mazique. We also find no violation of Rule 106, SCRE, because the court allowed Mazique to play the full audio recording in his defense. Further, because Mazique chose to recall two witnesses in his defense, he would have lost last argument regardless of whether the court had not redacted the audio tapes. Finally, we find any error was harmless in light of the overwhelming evidence of Mazique's guilt. *See State v. Bryant*, 369 S.C. 511, 518, 633 S.E.2d 152, 156 (2006) ("Generally, appellate courts will not set aside convictions due to insubstantial errors not affecting the result."); *Arnold v. State*, 309 S.C. 157, 172, 420 S.E.2d 834, 842 (1992) (stating error is harmless beyond a reasonable doubt if it did not contribute to the verdict obtained).

## V. Officer's Notes

Mazique argues the trial court erred in refusing to require the State to provide him a copy of the officer's handwritten notes for cross-examination. We disagree.

During Mazique's cross-examination of Detective Chatfield, it was revealed that Chatfield had written notes about the case. Mazique told the court he had not received any

written notes in his discovery. The State responded that the policy is to not turn over written notes of a detective's thoughts or feelings. The court agreed, and Mazique did not object. Because Mazique did not object or move to have the notes produced, we find this issue is not preserved for our review. *See State v. Walker*, 366 S.C. 643, 660, 623 S.E.2d 122, 130 (Ct. App. 2005) ("An issue may not be raised for the first time on appeal, but must have been raised to the trial judge to be preserved for appellate review.").

## VI. Cross–Examination of Officers

Mazique argues the trial court erred in denying him the right to effective cross-examination of officers. We disagree.

Mazique argues on appeal that the court erred in not allowing him to challenge Detective Chatfield's testimony and recollection of events by offering into evidence a document produced by Chatfield that Mazique believed would show additional inconsistencies between Chatfield's report and testimony. Further, he asserts the court did not allow him to play the interview audio to impeach Chatfield's testimony during cross-examination and did not allow him to question Chatfield about whether the tapes were altered from the original. Further, he asserts his cross-examination of Officer Scales was unduly limited by the court not allowing him to play the surveillance video for the jury. Finally, he argues the court's refusal to make the transcript of the pre-trial hearing available to Mazique limited his ability to cross-examine Chatfield during the trial.

Mazique fails to cite to any case law for these assertions; therefore, we find he has abandoned them. *See* Rule 208(b)(1)(D), SCACR (requiring citation to authority in the argument section of an appellant's brief); *State v. Lindsey*, 394 S.C. 354, 363, 714 S.E.2d 554, 558 (Ct. App. 2011) (holding "[a]n issue is deemed abandoned and will not be considered on appeal if the argument is raised in a brief but not supported by authority").

## VII. Cross–Examination of Witness

Mazique argues the trial court erred in refusing to allow him to cross-examine a witness about any pending charges to examine for bias, motive, etc. We disagree.

Rule 608(c), SCRE, provides: "Bias, prejudice or any motive to misrepresent may be shown to impeach the witness either by examination of the witness or by evidence otherwise adduced."

■ Mazique argues the trial court erred under Rule 608(c), SCRE, by preventing him from cross-examining the robbery victim about the existence of any pending charges against her. He argues Rule 608(c) provides evidence of a witnesses' pending charges is appropriate when it is offered for impeachment purposes. He maintains "[p]ending charges could create the possibility that [the victim] would give biased testimony in an effort to have the solicitor highlight to her future trial judge how she had cooperated in the instant case."

However, at trial, Mazique asked the victim if she had ever been arrested and did not ask her whether she had any pending charges. Because Mazique did not object or offer evidence of the victim's pending charges, we find this issue is not preserved for our review. *See Walker,* 366 S.C. at 660, 623 S.E.2d at 130 ("An issue may not be raised for the first time on appeal, but must have been raised to the trial judge to be preserved for appellate review.").

## VIII. Prejudicial Effect

Finally, Mazique argues the cumulative effect of all the foregoing errors prevented him from having a fair trial.

He asserts the record shows a multitude of substantial issues that prevented him from having a fair trial, and reversal is required under the doctrine of cumulative error. Because we find no error by the trial court on any of the issues raised by Mazique, we need not address this issue. *See Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not review remaining issues when its determination of another issue is dispositive of the appeal).

## CONCLUSION

Accordingly, the trial court is

**AFFIRMED.**

GEATHERS and MCDONALD, JJ., concur.