800 S.E.2d 782

**CITY OF COLUMBIA, Respondent,**

v.

**Marie-Therese ASSA'AD-FALTAS, Appellant.**

Appellate Case No. 2015-000941
Opinion No. 27723

Supreme Court of South Carolina.

Submitted February 15, 2017
Filed June 21, 2017
Rehearing Denied August 17, 2017

Appellate Defender John H. Strom, of Columbia, for Appellant.

Bruce H. Greenberg, Jr., of Columbia, for Respondent.

PER CURIAM:

In this direct appeal, Appellant Marie-Therese Assa'ad-Faltas appeals her simple assault conviction and sentence, arguing her right to self-representation was violated and that she is entitled to a new trial in which she represents herself. For many years, Appellant has engaged in a pattern of frivolous filings and inappropriate conduct towards the courts, court officers, and court employees of this State. Appellant's abuse of the justice system has even reached the United States Supreme Court. *See Assa'ad-Faltas v. Richland Cnty.*

*Sheriff's Dept.,* —— U.S. ——, 135 S.Ct. 1418, 191 L.Ed.2d 354 (2015) (noting Dr. Faltas has "repeatedly abused" the United States Supreme Court's process).

Appellant's unrelenting inappropriate conduct in the South Carolina courts necessitated that certain restrictions be placed upon Appellant's pro se access to the courts to curb her abuse of the judicial process. In light of this and after carefully considering the facts of this case, for the reasons that follow, we affirm Appellant's conviction and sentence.

## I.

Appellant was charged with simple assault following a September 11, 2009 confrontation with her then-landlord ("Landlord"), who had previously been a target of Appellant's unrelenting litigiousness and harassment.[1] Earlier that month, Landlord notified Appellant that a routine property inspection would take place under the terms of the lease; Appellant objected to the proposed date for the inspection and it was rescheduled; however, Appellant objected to the second proposed date as well and thereafter typed up a notice protesting Landlord's entry into her apartment on the rescheduled day and time.[2] Appellant mailed a copy of this objection to Landlord (and faxed a copy to Landlord's attorney), but Appellant nevertheless was concerned Landlord would deny receiving it; Appellant testified she therefore felt compelled also to personally hand-deliver a copy of her objections to Landlord.

On the day of the confrontation, Landlord had come to the apartments to perform some maintenance outside of one of the buildings; as Landlord was working, she spotted Appellant coming towards her with a piece of paper in her hand. Landlord previously was advised by her attorney not to accept

---

1. This was not the first tumultuous relationship between Appellant and a landlord. *See Koon v. Fares,* 379 S.C. 150, 666 S.E.2d 230 (2008) (affirming the circuit court's resolution of the eviction dispute adversely to Appellant and in favor of Appellant's former landlord).

2. Appellant explained she could not be present for the rescheduled inspection since she had a brief due at the Court of Appeals on that date and that she strenuously objected to Landlord entering the apartment in her absence based on her fear that Landlord would steal and/or photograph her belongings.

any paperwork from Appellant and to insist that Appellant provide any and all paperwork to Landlord's attorney; accordingly, without even knowing what the papers were, Landlord began backing away and instructed Appellant to leave her alone and to take the documents to the attorney.

Appellant admitted Landlord instructed her to "go away" and that she disregarded that request; however, Appellant contends she merely touched the papers to Landlord's hand and the papers thereafter fell to the ground. In contrast, both Landlord and an eyewitness testified that Appellant repeatedly and forcefully shoved the papers into Landlord's chest and stated in a loud, hostile manner "You got it! You got it!" Landlord immediately called the police. Appellant was charged with simple assault by way of a courtesy summons.

## II.

The legal issues before the Court involve Appellant's Sixth Amendment right to self-representation described in *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Because the right to proceed pro se as a criminal defendant is not absolute and may be forfeited where a litigant repeatedly abuses the judicial process, Appellant's history of inappropriate conduct informs our analysis of this case. *See Cochran v. Morris*, 73 F.3d 1310, 1316 (4th Cir. 1996) (finding "a plaintiff's past litigious conduct *should inform* a [ ] court's" determination of whether a claim is frivolous and thus abusive of the judicial process (emphasis added)) (citing *In re Mc-Donald*, 489 U.S. 180, 184, 109 S.Ct. 993, 103 L.Ed.2d 158 (1989)). Accordingly, we first summarize some of Appellant's past litigious conduct before exploring the procedural history of this specific case.

Over the last twenty years, Appellant has engaged in a pattern of vexatious and disruptive conduct aimed at courts throughout South Carolina and beyond. *See, e.g., Assa'ad-Faltas v. Carter*, No. 1:14CV678, 2014 WL 4566037, at *4–5, *9 (M.D.N.C. Sept. 15, 2014) (listing numerous judicial decisions which "show that [Appellant] repeatedly has abused the litigation process[,] both in state and federal courts" and finding the specific claims before that court to be "legally frivolous and malicious"). Since 1997, Appellant has been involved in fifty-

two matters before this Court and twenty-one matters before the court of appeals, the vast majority of which Appellant has initiated and which have been found to be without merit or frivolous.

During Appellant's attendance at a January 2011 oral argument before this Court in a matter to which Appellant was not a party, Appellant stood and attempted to address the Court to offer her opinion on how the case should be resolved. Additionally, Appellant has pursued and approached individual members of this Court and other Court personnel in non-public areas of the Courthouse, in the Courthouse parking lot, at a hotel in Columbia, and even during a worship service at a local church, all in various attempts to raise legal arguments or discuss pending litigation matters. Her unrelenting efforts to contact and harass individual (current and former) Justices of this Court have resulted in members of this Court recusing themselves from all matters involving Appellant.

Additionally, Appellant repeatedly submits an overwhelming volume of written documents, either seeking special privileges, requesting that this Court intervene in matters which are outside our appellate jurisdiction, or addressing matters which are altogether non-justiciable. During the last six months, Appellant has requested that this Court grant her permission to sit for either the July 2017 or February 2018 bar examination without paying an application fee or obtaining a law school degree; she has asked to be appointed the Director of South Carolina Court Administration to implement an initiative applying scientific principles to the administration of justice; she has forwarded to this Court her ideas for how Congress could repeal and replace the Affordable Care Act;[3] and she has asked this Court to make a public show of support for Coptic Christians in Egypt in the wake of recent violent attacks targeting the religious group. These matters are typical of Appellant's frequent submissions which fall well outside this Court's purview; however, the extensive time and effort the Court and its staff must expend to ensure each of Appellant's countless submissions is given fair and meaningful consideration to determine what Court action, if any, is necessary results in diversion of limited judicial resources away from the

3. 42 U.S.C. §§ 18001–18122 (2010).

many other complex and important matters pending before this Court.

However, Appellant's abuse of the judicial process is not limited to our appellate courts. Appellant has also persistently engaged in disruptive and inappropriate conduct in state circuit courts such that her physical access to the Richland County Courthouse was restricted based on findings by the circuit court:

> I find that [Appellant] is in the Richland County Courthouse on an almost daily basis, that she is insulting and demanding to personnel in the Clerk of Court's office, that she is a constant irritant to the Solicitor's office, that she has been banned from the Solicitor's office for disruptive behavior and has had to be escorted from that office by law enforcement, that she has harassed individual solicitors by following them around the courthouse, that she constantly calls the office of the undersigned to the point that I have had to post her phone numbers on office phones with instructions to my staff not to answer incoming calls from her numbers, that she appears in courtrooms and attempts to have ex parte conversations with sitting judges involved in other cases, and that the security forces at the Richland County Courthouse have advised the undersigned that [Appellant] is a constant nuisance to the orderly oversight of activity in a very busy courthouse. Even the Public Defender's office has had to deal with [Appellant] loitering at or near the entrance to that office.

> It is fair to say that no other criminal defendant in Richland County has been treated with such consideration as [Appellant]. In response, [Appellant] has treated this Court and courthouse personnel with rudeness, incivility[,] and constant harassment.... The people's business must be conducted in an orderly and unencumbered manner. [Appellant] has created an obstruction to this process.

Subsequently, this Court received reports that Appellant thereafter attended circuit court proceedings in which she was not involved and disruptively held up placards in an attempt to convey her objections to the proceedings.

In an effort to restrict Appellant from engaging in such inappropriate conduct, this Court issued an order on Decem-

ber 23, 2009, prohibiting Appellant from filing anything with this Court unless it is signed and filed by an attorney.[4] Thereafter, in April 2011, the Court expanded that prohibition to preclude Appellant from filing anything in *any* court of this state in a pro se capacity based on Appellant's persistent disregard for and abuse of the judicial process. In response to Appellant's repeated attempts to circumvent this Court's orders, including a series of emails Appellant sent to judges and law clerks about pending litigation, on October 24, 2012, then-Chief Justice Toal issued an order expressly prohibiting Appellant from contacting "any judge, justice, law clerk, clerk of court or any other officer or employee of the Judicial System by telephone, e-mail or any other form of electronic communication."

Although this Court subsequently decided to modify its restrictions and prospectively permit Appellant to proceed pro se in criminal actions in which she is a defendant, the Court nevertheless cautioned in November 2013 and again in January 2014 that the right to defend pro se in a criminal trial is not absolute and may be forfeited "if [Appellant] is unable or unwilling to abide by the rules of procedure and courtroom protocol."[5]

Quite frankly, this Court's efforts have not been successful. To the contrary, in the time since our initial December 23, 2009 order attempting to curtail Appellant's inappropriate conduct, the number and frequency of Appellant's meritless filings and inappropriate behaviors has increased rather than decreased. Since December 23, 2009, Appellant has filed (or attempted to file) pro se with this Court thirty-one appeals

---

4. Four days after this Court's December 23, 2009 order, Appellant pursued and, without identifying herself, approached a member of this Court at a church service for the purpose of "serving" a packet of papers detailing her exceptions to this Court's order restricting her frivolous filings and requesting that the Court reconsider her objections.

5. In our January 30, 2014 order, we also clarified "Neither this order nor the order of November 7, 2013, shall have any impact on actions previously taken under this Court's order of June 28, 2013, or the earlier orders of this Court or its Chief Justice referenced in that order." Appellant's trial in this case was held April 24–25, 2013, and therefore, is unaffected by this Court's subsequent decision to permit Appellant to represent herself pro se in criminal trials.

and petitions for extraordinary writs,[6] 103 motions and supplemental motions, and sixty-one other items of correspondence, in addition to countless phone calls and emails to court staff (notwithstanding this Court's order expressly forbidding such contact). Moreover, since January 2014, Appellant has visited this Courthouse more than thirty times despite the fact that no hearing or oral argument was scheduled in any matter involving her. In short, Appellant's conduct and the overwhelming number of documents and exhibits she submits constitute a gross abuse of the justice system. Although this Court has found it necessary to take steps to curb Appellant's aggressive pro se litigiousness as part of our " 'responsibility [ ] to see that resources are allocated in a way that promotes the interests of justice,' " *Assaad-Faltas v. University of S.C.*, 971 F.Supp. 985, 991 (D.S.C. 1997) (quoting *In re McDonald*, 489 U.S. 180, 184, 109 S.Ct. 993, 103 L.Ed.2d 158 (1989)), Appellant persists unabated in her " 'frivolous demands on the Court's limited resources.' " *Martin v. District of Columbia Court of Appeals*, 506 U.S. 1, 2, 113 S.Ct. 397, 121 L.Ed.2d 305 (1992) (quoting *Zatko v. California*, 502 U.S. 16, 18, 112 S.Ct. 355, 116 L.Ed.2d 293 (1991)). With this history of Appellant's prolific inappropriate conduct in mind, we turn now to the procedural history of this specific case.

## III.

In addition to the underlying assault charge, Appellant faced several other municipal court charges. It appears that in early 2013, Appellant was represented by attorney Theodore Lupton in five municipal court matters; however, due to Appellant's abusive and harassing behavior, Mr. Lupton moved to be relieved as counsel in February 2013. During the motion hearing before the circuit court,[7] Mr. Lupton explained:

---

6. In comparison, during the twelve-year period from January 15, 1997 to December 15, 2009, Appellant commenced only seventeen actions.

7. Although it is not clear from the record why the motion to relieve counsel was pending before the circuit court as to Appellant's municipal criminal charges, the circuit court order denying Mr. Lupton's motion to be relieved as counsel specifically references the warrant number from which Appellant's underlying municipal court assault charge arose.

From the beginning[,] I have tried to work with her. She has been—you know, I feel that—that her conduct, starting with that first communication, has been abusive in terms of insult towards myself, insults towards those that are friends of mine, colleagues of mine, towards the Court, towards the judicial system generally.

Your Honor, I've tried to ignore all these. I've tried to explain to her that she's taking positions that are contrary to the law. She has made demands, not requests, but demands, that [I] take actions which I have explained to her are contrary to my legal ethics, filing motions that I explained are not legally merited and thus would be frivolous improper motions that I am prohibited from filing under my ethics. She has not accepted that and has attempted to harass me into filing motions.... Your Honor, it's—it's excessive and extreme. She demands things that are not merited, demands immediate responses even when I've tried to explain that I have other matters I have to deal with.

Your Honor, I've spent hours every single day with very few exceptions since I've been appointed on this case dealing with her. She has accused me of lying when I didn't respond in what she thought was a timely fashion....

It's just a pattern of ... intruding into my personal life doing—you know, of course, she has the right to research her attorneys, but commenting on my personal appearance on my website, ... my wife's appearance on the website, [Appellant] was saying that our pictures were not very good and that she could take better ones for us, trying to Facebook friend my wife. Just things of that nature over the course of just over a month have created a situation where the abuse and harassment is such that I cannot represent her.

And I've represented some very difficult clients, I've represented clients that were verbally abusive to me, I've taken it. I feel that as a member of the Bar, it is my duty to represent my client, even if they don't like me, even if they are abusive towards me.... But in this situation, her absolute demands that I take actions, her refusal to accept reality, really, has gotten to the point where I cannot represent her. And this pattern is such that I don't think

anybody can. I don't think anybody can represent her unless they do what she demands.

... I think that she does not see she has done anything improper or wrong. I think that she is absolutely firmly convinced in her mind that because her case ... is special, different and unique, that she is absolutely justified in what she does.... And she has already threatened to engage in litigation in Federal Court against me if I attempt to continue to represent her.

Appellant joined the motion, stating she did not wish for Mr. Lupton to continue to represent her and strenuously asserting her right to self-representation.[8] Accordingly, the circuit court conducted a thorough *Faretta* colloquy to advise Appellant of the dangers of self-representation, during which Appellant emphatically stated her desire to represent herself based on her opinion that she would be more successful than counsel in representing her own interests and that she knew more about certain areas of the law than many lawyers and judges.

The circuit court noted Appellant's advanced medical education and found that Appellant understood the ramifications of electing to proceed pro se; however, the court referenced this Court's orders precluding Appellant from appearing in or filing documents with any court of the state in a pro se capacity and took the matter under advisement. Shortly thereafter, the circuit court denied the motion to relieve counsel in a written order. Notably, the order did not include any findings of fact or conclusions of law regarding the court's decision to deny the motion; rather, the order simply commended Mr. Lupton for his adept representation of Appellant[9] and placed restrictions on the manner in which Appellant was permitted to contact and communicate with Mr. Lupton.

Five days later, Appellant, represented by Mr. Lupton, appeared at a scheduling hearing in municipal court regarding

---

**8.** In addressing the court directly, Appellant explained that she was dissatisfied with Mr. Lupton because she believed Mr. Lupton mischaracterized her contact as abusive and harassing and because counsel left "a lot of loose ends" in preparing her defense that she would not have tolerated had she been representing herself, such as counsel's inability to obtain nonexistent police "dash cam" videos of the incident in question.

**9.** We likewise commend Mr. Lupton.

several of her pending municipal court charges, including the underlying assault charge. During that hearing, Appellant was permitted to address the court directly regarding a host of issues, including:

> I just want to put it on the record. The other thing is that I do not recognize Mr. Lupton as my Lawyer. I do not want him, I do not trust him.

Despite this statement of displeasure to the municipal court (in the midst of a litany of other grievances), neither Appellant nor her counsel renewed the previous motion to relieve counsel, requested that the municipal court conduct a *Faretta* inquiry, or requested a ruling on the issue of Appellant's right to self-representation. *See* Rule 602(e)(2), SCACR (specifying that a motion to relieve counsel must be directed to the trial judge). Accordingly, the municipal court made no ruling on this issue, and Appellant's assault charge was set for trial on Thursday, April 25, 2013.[10]

The day before trial, the municipal court heard pretrial motions during which neither Appellant nor counsel renewed, raised, or requested that the municipal court rule on the issue of Appellant's right to self-representation. Following a bench trial [11] the next day, Appellant was convicted of simple assault and sentenced to twenty days in jail.

Although Appellant was represented by Mr. Lupton throughout trial, she was nevertheless permitted to address the court directly regarding more than twenty procedural matters and points of law, as well as to submit thirty-one

---

10. Three days before trial, Appellant sent an email directly to the municipal court (and to two law clerks employed by this Court), complaining about Mr. Lupton's representation "being forced on her" and forwarding a chain of emails she and Mr. Lupton had previously exchanged. In the forwarded email exchange, Appellant demanded that Mr. Lupton move for a continuance due to her severe knee pain and situational depression; however, Mr. Lupton refused to request a continuance on Appellant's behalf, explaining he believed Appellant was merely attempting to delay trial and stating "I am not asking to continue this case when I believe, based on the evidence I have seen, that you are simply trying to manipulate the system to stall for more time because you are afraid of trial."

11. Appellant requested a bench trial so she would have more leeway in discussing the circumstances of other proceedings, evidence of which would have been excluded as irrelevant during a jury trial.

evidentiary exhibits (distinct from the one exhibit submitted by counsel) and an *"Anders"* brief of issues Appellant insisted on raising despite counsel's refusal to do so based on his ethics and professional judgment. Further, at the conclusion of Appellant's testimony on direct examination, the municipal court granted Appellant free-reign to present "narrative" testimony to raise any additional facts or points of law she wished the court to consider.[12] Essentially, Appellant was permitted hybrid representation.[13]

Despite the municipal court's generous accommodations, Appellant repeatedly disrupted, delayed, and prolonged the proceedings. Specifically, Appellant engaged in three emotional outbursts during the proceedings,[14] continually interjected

---

12. Appellant spent most of this time discussing circumstances surrounding her unrelated harassment charges in circuit court, including details of how she successfully defended herself pro se against these charges despite not having received "full discovery." Although the municipal court gently reminded Appellant to please stay on the topic of the assault charges, Appellant balked at the suggestion that her testimony might be irrelevant and continued to discuss immaterial matters. Appellant also submitted into evidence transcript excerpts from unrelated court proceedings and described in detail how her involvement in numerous litigation endeavors has disrupted her life.

13. *Miller v. State*, 388 S.C. 347, 347, 697 S.E.2d 527 (2010) ("Since there is no right to 'hybrid representation' that is partially *pro se* and partially by counsel, substantive documents, with the exception of motions to relieve counsel, filed *pro se* by a person represented by counsel are not to be accepted unless submitted by counsel.") (citing *State v. Stuckey*, 333 S.C. 56, 508 S.E.2d 564 (1998); *Foster v. State*, 298 S.C. 306, 379 S.E.2d 907 (1989)); *State v. Devore*, 416 S.C. 115, 120–21, 784 S.E.2d 690, 693 (Ct. App. 2016) (observing there is no right to hybrid representation under either the United States or South Carolina constitution and explaining substantive documents submitted pro se by litigants who are represented by counsel should not be accepted by the clerk of court for filing); *see also Jones v. State*, 348 S.C. 13, 14, 558 S.E.2d 517, 517–18 (2002) (holding "counsel cannot serve as a mere conduit for *pro se* documents in an effort to avoid the prohibition against hybrid representation and the displeasure of his client"); *id.* ("Tails should not wag dogs. Merely because an appellant believes that the irrelevant is relevant is no reason to turn the system on its head and solemnly contemplate the wisdom of a person who does not have the sense to be guided by experts in an area where he himself possesses no expertise." (citation omitted)).

14. Two outbursts occurred during the Victim's testimony, and a third occurred during sentencing.

without first being recognized to speak, and interrupted the municipal court, defense counsel, and opposing counsel more than a dozen times. Despite being reminded to stay on relevant topics twenty-two times by the municipal court and an additional seventeen times by her counsel (in addition to five relevance objections to various portions of her testimony by opposing counsel), Appellant persisted in raising frivolous legal arguments and impertinent factual assertions, including her claim that "known agents" of "false accusers" infiltrated the jury venire in an unrelated proceeding and a lengthy and detailed exposition about how Appellant's various current and former health problems justified her request to remain seated during the proceedings *after* the municipal court had already granted the request.

Despite counsel's zealous representation and Appellant's active participation throughout the proceedings, Appellant first unequivocally asserted her right to self-representation to the municipal court during the sentencing proceeding following her conviction. Specifically, Appellant contended she was the victim in the situation—not the aggressor—that Landlord lied on the stand, and that Mr. Lupton was "ineffective" because he did not advance Appellant's interests by raising the legal arguments she wished to be raised. Appellant claimed Mr. Lupton had conspired with prosecutors and judges to ensure that Appellant was wrongly convicted and that Mr. Lupton's refusal to raise her requested legal arguments stemmed from his dislike of Appellant and his inability to comprehend her clever and prescient legal theories. The municipal court did not rule on the issue of self-representation.

Thereafter, in December 2013, Appellant appeared before the circuit court in the appeal from her assault conviction. At the outset of that hearing, the circuit court granted Appellant's motion to relieve counsel and permitted Appellant to appear pro se. During the hearing, Appellant argued that her constitutional right to self-representation was violated by having "derelict" counsel "forced" on her during and after her municipal court trial. Appellant argued this was structural error and warranted reversal of her conviction.[15]

---

**15.** Appellant further argued that based on principles of federalism and sovereignty, the City of Columbia does not possess the authority to have

In response, the City argued that neither Appellant nor her counsel moved to relieve counsel before the municipal court prior to trial; because this issue was not timely raised, the municipal court had no opportunity to rule on it, and therefore, Appellant's argument was not preserved for appellate review. On reply, Appellant argued the issue of self-representation *was* raised but those discussions took place in a portion of the proceedings that was not included in the official transcript.[16] In a written order, the circuit court found there was no evidence the municipal court abused its discretion in not allowing Appellant to proceed pro se at trial.

Appellant filed a timely pro se notice of appeal with this Court, along with a motion to be appointed counsel. On appeal, Appellant is represented by an attorney from the South Carolina Commission on Indigent Defense. Despite this Court's numerous orders specifically limiting Appellant's ability to file anything with an appellate court in a pro se capacity (not to mention the Court's general refusal to accept pro se filings from any litigant who is represented by counsel), Appellant has nevertheless filed or attempted to file ten pro se motions in the twenty-five months since the notice of appeal was filed.[17] It appears most (if not all) of these filings stem

---

a court in the first instance, and thus, her conviction is void and must be vacated.

**16.** Months after the transcript was delivered and the designation of matter to be included in the record on appeal was filed by counsel, Appellant, in a pro se capacity, submitted to this Court altered versions of official transcripts as exhibits to motions she attempted to file in this case. Appellant contends these versions of the transcript she submitted contain the discussions that were omitted from the official transcript.

**17.** Appellant first submitted a sixty-five page pro se document titled "Appellant's Motion to Suspend this Appeal or to Deem Its Being Held in Abeyance Suspension for the Purpose of Presenting After-Discovered Evidence *to the Trial Court*" on June 30, 2015, and on November 6, 2015, a second pro se document titled "Appellant's Motions and Brief AS OF RIGHT UNDER *ANDERS V. CALIFORNIA*, 386 U.S. 738 (1967), to Suspend this Appeal for the Purpose of Presenting After-Discovered Evidence *to the Trial Court* AND to Restore Marie-Therese Assa'ad-Faltas, MD. MPH, Her Fourteenth Amendment Rights, Or, in the alternative, Motion for the Court to Appoint *Another* Counsel to Argue the Sole Point that This Court Cannot Deprive Marie-Therese Assa'ad-Faltas, MD. MPH of her *Anders* Rights." The Clerk of Court refused to accept either of these documents for filing and reminded Appellant that,

from Appellant's displeasure that her appointed counsel refuses to give Appellant control over how the appeal is handled and refuses to raise frivolous factual and legal points requested by Appellant.

## IV.

Through counsel, Appellant now argues she unequivocally invoked the right to self-representation before the municipal court and that the municipal court committed an error of law in failing to conduct a *Faretta* hearing regarding her request

---

as she was represented by counsel, the only pro se motion she was permitted to make is a motion to relieve counsel. Six weeks later, Appellant submitted a pro se motion to relieve counsel, in which she referred to her counsel as an "uninspired and unprincipled functionary" who "refuses to show [Appellant] the brief, if any, before filing it and has refused to give [Appellant] any control over how the appeal is handled." Appellant thereafter supplemented her motion to relieve counsel on January 19, 2016, and again on January 27, 2016, before this Court denied the motion on February 11, 2016.

On June 13, 2016, Appellant filed a second pro se motion to relieve counsel, which was denied on August 4, 2016. Appellant filed a third pro se motion to relieve counsel on December 28, 2016, and in its order denying the motion, this Court found that because Appellant had filed three motions to relieve counsel without good cause, Appellant would be precluded from filing "any further motions to relieve counsel in this matter."

Less than two months later, on February 21, 2017, Appellant (who was still represented by appointed counsel) filed yet another pro se motion, this one styled "Appellant's First Contingent Motion to Appoint Counsel for the purpose of rehearing Or to allow her to file her own Petition for Rehearing In case the decision is adverse to her but current counsel does not wish to seek rehearing AND to toll the rehearing time until this motion is decided." In the body of the motion, Appellant justified her pro se submission by observing "This Court barred Appellant from filing more motions *to relieve* counsel *in this case* but did **not bar her from filing a motion to appoint counsel** *in this case or any other*." Appellant thereafter filed two supplements to this motion—one on March 3, 2017, and another on March 13, 2017. Appellant's motion is denied, and we hereby direct the Clerk of this Court to reject any further pro se filing in which Appellant addresses any legal issue, or requests any relief, other than the appointment of counsel or the relief of appointed counsel (subject to this Court's order forbidding any further pro se motions to relieve counsel in this particular matter), regardless of how the motion is styled. Any such pro se motion or any other violation of this Court's orders will result in contempt proceedings being initiated against Appellant, notwithstanding this Court's prior forbearance in initiating contempt proceedings warranted by Appellant's previous violations of this Court's orders.

to proceed pro se. Appellant also argues that this Court's orders which prospectively place restrictions on her ability to represent herself in a pro se capacity violate her Sixth Amendment right to self-representation; thus, according to Appellant, the circuit court committed reversible error in relying upon them. We disagree and address these issues in turn.

### A. Appellant's Right to Self-Representation before the Municipal Court

"A defendant has a constitutional right to self-representation under the Sixth and Fourteenth Amendments." *State v. Samuel*, 414 S.C. 206, 211, 777 S.E.2d 398, 401 (Ct. App. 2015) (quoting *Faretta*, 422 U.S. at 807, 95 S.Ct. 2525). "However, the right of self-representation is not absolute." *Id.* (quoting *United States v. Frazier-El*, 204 F.3d 553, 559 (4th Cir. 2000)). "The right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law." *Faretta*, 422 U.S. at 834, 95 S.Ct. 2525 (1975).

Indeed, "[t]he right of self-representation does not exist to be used as a tactic for delay, for disruption, for distortion of the system, or for manipulation of the trial process." *Samuel*, 414 S.C. at 212, 777 S.E.2d at 401 (citation omitted). "A trial judge may refuse to permit a criminal defendant to represent himself when he is 'not able and willing to abide by rules of procedure and courtroom protocol.' " *Id.* (quoting *United States v. Lopez–Osuna*, 242 F.3d 1191, 1200 (9th Cir. 2001)). "A trial court must be permitted to distinguish between a manipulative effort to present particular arguments and a sincere desire to dispense with the benefits of counsel." *Id.* (citing *Frazier–El*, 204 F.3d at 560).

In evaluating Appellant's claim that the municipal court infringed upon her constitutional right of self-representation, we must first determine whether Appellant effectively invoked this right during proceedings before the municipal court. To be effective, "[a]n assertion of the right of self-representation therefore must be (1) clear and unequivocal; (2) knowing, intelligent and voluntary; and (3) timely." *Frazier-El*, 204 F.3d at 558 (internal citations omitted). "The particular requirement that a request for self-representation be clear

and unequivocal is necessary to protect against an inadvertent waiver of the right to counsel by a defendant's occasional musings on the benefits of self-representation." *Id.* (internal quotation marks and citations omitted).

"At bottom, the *Faretta* right to self-representation is not absolute, and the government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer." *Id.* (internal quotation marks and citation omitted). Where the circumstances surrounding an accused's purported assertion of the right to proceed without counsel suggest "a manipulation of the system [rather] than an unequivocal desire to invoke [the] right of self-representation" and "dispense with the benefits of counsel," a court is justified in insisting that the accused proceed with the assistance of counsel. *Id.* at 560 (refusing to let a defendant proceed pro se as part of a manipulative strategy to advance frivolous arguments counsel had previously refused to make).

In this case, the only motion to relieve counsel was raised to (and denied by) the circuit court, yet the circuit court's denial of this motion is not a basis for Appellant's claim of error in this appeal. Rather, Appellant's claim of error is that the municipal court failed to conduct a subsequent *Faretta* inquiry to explore whether her desire to proceed pro se and waive the right to counsel was knowing, intelligent, and voluntary.

The problem with this argument is that Appellant's right to self-representation was not unequivocally raised or asserted to the municipal court for its consideration before or even during her trial. As previously noted, Appellant raised a passing complaint about Mr. Lupton during a lengthy diatribe at a scheduling hearing six weeks prior to trial; however, the issue was not mentioned again during subsequent pretrial hearings or during trial itself. Indeed, at no point did the municipal court judge recognize this as an issue that required a distinct ruling from him. Nor did Appellant request that the municipal court rule on this specific issue, despite her ample opportunities prior to and during her trial to personally raise any point of law or fact she wanted the municipal court to consider.

In light of the record and the "constitutional primacy" of the right to counsel over the right to self-representation,

*Frazier-El*, 204 F.3d at 559, along with the "presumption against waiver of the constitutional right to counsel," *Von Moltke v. Gillies*, 332 U.S. 708, 723, 68 S.Ct. 316, 92 L.Ed. 309 (1948), we cannot say the municipal court erred in failing to construe Appellant's "musings" as a waiver of the right to counsel. Our finding is particularly justified since "[t]he requirement that a request for self-representation be clear and unequivocal also prevents a defendant from taking advantage of and manipulating the mutual exclusivity of the rights to counsel and self-representation." *Frazier-El*, 204 F.3d at 559; *see also United States v. Ductan*, 800 F.3d 642, 649 (4th Cir. 2015) ("Consistent with our view that representation by counsel is the 'default position,' we have instead instructed lower courts to 'indulge in every reasonable presumption' against the relinquishment of the right to counsel." (citation omitted)).

██ Additionally, even had the issue been unequivocally and timely raised to the municipal court, we find the municipal court would have been justified in insisting that Appellant proceed with the assistance of counsel. Indeed, Appellant's long history of abusing the judicial process, coupled with her conduct in this case in abusing and harassing courts and court officers; disrupting, delaying, and prolonging proceedings; and persistently disregarding and circumventing the orders of this Court aimed at curbing her improper conduct all underscore the Court's interest in preventing Appellant's further manipulation of the system and "in ensuring the integrity and efficiency of the trial." *Frazier-El*, 204 F.3d at 558; *see State v. Hester*, 324 S.W.3d 1, 33 (Tenn. 2010) ("Disingenuous invocations of the right of self-representation that are designed to manipulate the judicial process constitute an improper tactic by a defendant and are not entitled to succeed.") (citing *United States v. Welty*, 674 F.2d 185, 187 (3d Cir.1982)); *id.* ("A court may deny a manipulative request for self-representation, distinguishing between a genuine desire to invoke a right of self-representation and a manipulative effort to frustrate the judicial process." (citations omitted)); *Tanksley v. State*, 113 Nev. 997, 946 P.2d 148, 150 (1997) (observing "[a] defendant's right to self-representation does not allow him to engage in uncontrollable and disruptive behavior in the courtroom," and finding "the defendant's pretrial activity is relevant if it affords a strong indication that the defendant[ ] will

48

disrupt the proceedings in the courtroom" (internal quotation marks and citations omitted)).

Indeed, the record as a whole indicates the underlying reason Appellant was dissatisfied with counsel was her frustration that counsel refused to give her control in how her proceedings were handled, refused to file frivolous subpoenas and motions, and refused to proffer irrelevant materials as evidentiary exhibits. It is apparent that Appellant sought to proceed pro se only to bombard the courts with irrelevant and meritless arguments and factual assertions (many of which she was able to raise to the municipal court herself). This is essentially the same rationale upon which the defendant in *Frazier-El* sought to dismiss his counsel and proceed pro se; however, instead of finding error, the Fourth Circuit Court of Appeals affirmed the district court's insistence that the defendant proceed with appointed counsel as the defendant's asserted right to self-representation was merely a manipulative tactic. 204 F.3d at 560; *see also United States v. Edelmann*, 458 F.3d 791, 809 (8th Cir. 2006) (affirming denial of request for self-representation which was partly based on the defendant's frustration that counsel refused to file frivolous pleadings); *Jones v. State*, 348 S.C. 13, 14, 558 S.E.2d 517, 518 (2002) (forbidding counsel to act as a conduit for pro se filings and insisting that counsel "use professional judgment in reviewing the documents and [ ] submit the client's arguments only if relevant and only after they have been edited by counsel for review by the Court"). We find Appellant likewise asserts a violation of her right to self-representation for manipulative reasons, and we therefore affirm as to this issue.

And finally, ironically Appellant did engage in self-representation throughout the trial in municipal court. As noted above, Appellant regularly interjected herself into counsel's role by her constant outbursts concerning all facets of the trial. Perhaps the clearest example of Appellant's handling of her defense is the municipal court's allowance of Appellant's unfettered ramblings following her counsel-directed testimony.

## B. Circuit Court's Reliance upon Orders of This Court

 Appellant further contends that this Court's orders that prospectively place restrictions on her ability to represent herself in a pro se capacity violate her Sixth Amendment right

to self-representation, and therefore, the circuit court committed reversible error in relying upon them. We disagree.

Although we acknowledge the extensive nature of the restrictions this Court has placed upon Appellant's ability to appear or submit filings in a pro se capacity, these restrictions have evolved over time to become increasingly tailored to target only that conduct by Appellant which is considered abusive and harassing. The Court's current order, though extreme, is nevertheless proportionate to Appellant's extreme and escalating behavior in harassing and burdening courts and court staff and in wasting judicial resources. We understand and appreciate Appellant's constitutional argument that, regardless of the subsequent modifications to our orders, any prospective restrictions on a litigant's ability to appear pro se fail to pass constitutional muster.

However, as a procedural matter, this case—an appeal from a municipal court conviction—is not the proper vehicle through which Appellant may challenge the constitutionality of the Court's orders.[18] Rather, for purposes of this appeal, the orders of this Court—right or wrong—were binding upon the lower courts, and the lower courts therefore did not commit reversible error in enforcing them. *State v. Cheeks*, 400 S.C. 329, 733 S.E.2d 611 (Ct. App. 2012) (citing S.C. Const. art. V, § 9) (noting decisions of this Court are binding precedents).

Additionally, even assuming arguendo Appellant's contentions were procedurally proper, " '[t]here is no constitutional right of access to the courts to prosecute an action that is frivolous or malicious.' " *Childs v. Miller*, 713 F.3d 1262, 1265 (10th Cir. 2013) (quoting *Tripati v. Beaman*, 878 F.2d 351, 353 (10th Cir.1989) (per curiam)). " 'No one, rich or poor, is entitled to abuse the judicial process.' " *Id.* Based on the record as a whole, we find Appellant's claim of error is without merit.

## V.

For the foregoing reasons, we affirm Appellant's conviction and sentence.

**AFFIRMED.**

---

18. Moreover, Appellant has already raised these constitutional arguments in petitions for rehearing and motions to reconsider the Court's orders, which have already been ruled upon by this Court.

KITTREDGE, Acting Chief Justice, HEARN, FEW, JJ., and Acting Justice James E. Moore, concur. BEATTY, CJ, not participating.