NOT DESIGNATED FOR PUBLICATION

No. 114,888

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DUANE WAHL,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Crawford District Court; A.J. WACHTER, JR., judge. Opinion filed August 25, 2017.
Affirmed in part, vacated in part, and remanded with directions.

*Kai Tate Mann*, of Kansas Appellate Defender Office, for appellant.

*Michael Gayoso, Jr.*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., POWELL and GARDNER, JJ.

*Per Curiam*: Duane E. Wahl pled guilty to one count of first-degree premeditated murder. He was sentenced to a term of life imprisonment with the possibility of parole after 25 years and lifetime postrelease supervision. In this appeal from the district court's denial of his K.S.A. 60-1507 motion, Wahl raises several claims of error. We agree with Wahl's claim that he should not have received lifetime postrelease supervision but affirm all other issues.

1

*Factual and procedural background.*

After Wahl pleaded guilty to one count of first-degree premeditated murder and was sentenced, he did not directly appeal his sentence. Instead, he sent to the district court a pro se motion for postconviction relief based upon ineffective assistance of counsel. The district court dismissed Wahl's motion, finding that it was filed outside the 1-year statute of limitations, did not demonstrate manifest injustice to justify the late filing, and was barred by the plea agreement. Wahl appealed that decision to this court and we affirmed. *Wahl v. State*, No. 107,934, 2013 WL 4564823, at *4-5 (Kan. App. 2013) (unpublished opinion). Thereafter, the Kansas Supreme Court granted review, reversed the district court and Kansas Court of Appeals, and remanded for the district court to consider Wahl's motion. *Wahl v. State*, 301 Kan. 610, 616-17, 344 P.3d 385 (2015).

Wahl's motion and memorandum raised multiple claims of ineffective assistance of counsel. First, Wahl claimed his original counsel, Steve Stockard, failed to relay a plea offer from the State that would have permitted him to plead guilty to second-degree murder in exchange for telling the State where he hid the victim's body. Wahl claimed that appointed counsel, Jennifer Brunetti, told him he should plead guilty to avoid the possibility of a hard 50 life sentence or the death penalty and failed to investigate the case before advising Wahl of the plea agreement. Wahl incidentally raised a concern about his competency at trial. Finally, Wahl claimed he was misled about the nature of the sentence because he thought he would receive a definite 25-year sentence and not an indeterminate life sentence with possibility of parole after 25 years.

Wahl later filed a motion for appointment of counsel and attached to it an affidavit from his sister, Shiela Hall. Hall swore that Brunetti told her that the district attorney "had offered, most likely, one more plea deal 25 years," then told her "the death penalty was still an option." Because Hall believed that Wahl would get the death penalty if he

2

did not accept the plea deal for first-degree murder, she begged Wahl to accept the plea deal.

After the Supreme Court remanded Wahl's case, finding it had been timely filed, Wahl submitted two additional affidavits via another pro se filing: one from his brother, Matthew Wahl, and one from his mother, Marjorie Buckley. The affidavit from his brother stated that he heard Brunetti tell Wahl when Wahl was in Crawford County Jail that he "could be sentenced to death if he went to trial" and that "a plea would give him 25 years before maybe he would get parole." The affidavit from Wahl's mother stated that she heard Brunetti tell Wahl when he was in Crawford County Jail that Wahl "could get the death sentence, if he didn't plea for 25 years before he could get parole."

Wahl then filed a pro se motion for an evidentiary hearing which raised additional claims. First, Wahl alleged Brunetti only met with him "3, 4, or more times for 5 to 10 minutes per each meeting" and stated the meetings occurred around court appearances. Wahl asserted that he had a mental and physical impairment caused by various medications which made him unable to assist in his defense and to understand what was happening during meetings with counsel. Wahl also alleged that neither counsel adequately investigated his case because they "would have potentially found that [his] live-in girlfriend or wife at the time the alleged murder was committed" had made a dying declaration that Wahl was innocent. Wahl asserted that neither counsel informed him of the offer for him to plead to second-degree murder in exchange for informing the State of the location of the body. Finally, Wahl reasserted his claim that Brunetti had informed him and his family that the death penalty was a possible punishment.

The district court then appointed counsel to represent Wahl in his K.S.A. 60-1507 proceedings. It scheduled a telephone conference for June 2, 2015, to determine whether an evidentiary hearing was necessary but, before that date, Wahl requested a preliminary

hearing. The district court granted Wahl's request, canceled the status conference, and held a preliminary hearing on July 30, 2015.

After the testimony was concluded, the court stated that the proceeding initially began as a preliminary hearing to determine if an evidentiary hearing was necessary, but the hearing had actually become an evidentiary hearing. The State agreed. The district court asked whether Wahl would produce any additional evidence if another evidentiary hearing were held, and Wahl's counsel responded:

> "Judge, the only other person I would call if there was an evidentiary hearing would be a Matthew Wahl but he's signed a statement that is attached to my client's supplemental pleading that he's filed so that is the only additional information that I would submit."

The court admitted the affidavit without objection from the State, heard closing arguments from counsel, then took the motion under advisement because the parties had offered transcripts and other matters that it had not yet read. The court specifically found that it had conducted an evidentiary hearing, that the only other evidence the defendant would have presented would have been the affidavit of Wahl's brother which the court already had, and that it would take that affidavit into consideration before making its findings in a written opinion.

On August 6, 2015, the district court filed its final order. First, the district court found Wahl had advanced only two claims of ineffective assistance of counsel at the hearing: entering a plea when Wahl was incompetent due to the medications and coercing the plea by stating he could be subject to the death penalty. The court found the following: (1) at all relevant times Wahl was competent and had knowingly entered into the plea agreement; (2) neither of Wahl's attorneys at any time informed him that he could potentially be subject to the death penalty if found guilty as charged; and (3) Wahl had been informed of the correct maximum punishment for his offense before entering

4

his plea. The district court held that Wahl had not shown ineffective assistance of counsel.

On August 3, 2015, despite the fact that Wahl was represented by counsel at the time, Wahl had mailed a pro se objection to not having another evidentiary hearing, saying he had additional evidence that he wanted to admit. The district court did not receive and file that objection until 4 days after its opinion was filed. Wahl has timely appealed the decision of the district court denying his K.S.A. 60-1507 motion.

*Has Wahl preserved his due process issue?*

Wahl contends he was denied due process when the district court determined the preliminary hearing would serve as the evidentiary hearing for his case. Before addressing the merits of this claim, we consider whether Wahl has preserved it for appeal.

Generally, issues not raised before the district court, including constitutional grounds for reversal, are not properly before us for review. *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015). Instead, they are to be asserted to the district court who has first-hand knowledge of the facts and circumstances and who should be given an opportunity to address or cure the matter. Wahl did not object, however, when the district court determined the preliminary hearing would function as an evidentiary hearing.

Wahl argues, however, that an exception to the general rule applies. See *In re Estate of Broderick*, 286 Kan. 1071, 1082, 191 P.3d 284 (2008).Wahl claims that hearing this issue will prevent the denial of a fundamental right. Accordingly, we choose to hear the issue to prevent the potential denial of Wahl's fundamental right to due process. See *Godfrey*, 301 Kan. at 1043.

*Was Wahl denied due process?*

Wahl asserts that he was denied procedural due process by the court's determination that the preliminary hearing would serve as his evidentiary hearing. Procedural due process is comprised of two essential elements: notice and the opportunity to be heard at a meaningful time and in a meaningful manner. *Kennedy v. Board of Shawnee County Comm'rs*, 264 Kan. 776, 797-98, 958 P.2d 637 (1998). Whether a person has received due process is a question of law over which we exercise unlimited review. *State v. Easterling*, 289 Kan. 470, 475, 213 P.3d 418 (2009).

To establish a due process violation, the person claiming the violation must show he or she was denied a specific procedural protection. *State v. Robinson*, 281 Kan. 538, 547, 132 P.3d 934 (2006). In determining what process is due, we use the factor balancing test from *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). *In re Marriage of Hutchison*, 47 Kan. App. 2d 851, 856, 281 P.3d 1126 (2012). The factors we balance are: (1) the individual interest at stake; (2) the risk of erroneous depravation of the interest and the probable value, if any, of additional or substitute procedural safeguards; and (3) the State's interest in the procedure used, including the fiscal and administrative burden additional or substitute procedures would incur. *Mathews*, 424 U.S. at 335; *Marriage of Hutchison*, 47 Kan. App. 2d at 856.

Wahl contends that he was deprived of notice that the entirety of this claim was to be determined in the hearing. To the extent Wahl may be arguing that he was entitled to notice of an evidentiary hearing instead of notice of a preliminary hearing, we find no deprivation. Wahl received notice of a preliminary hearing and does not show that the notice he should have received of an evidentiary hearing would have been any different in kind from the notice or the preliminary hearing he actually received. In a K.S.A. 60-1507 proceeding, the purpose of a preliminary hearing is to determine if a substantial question of law or fact exists that would support proceeding to a full evidentiary hearing.

*Lujan v. State*, 270 Kan. 163, 170, 14 P.3d 424 (2000). The purpose of the evidentiary hearing is, in contrast, to determine the merits of the claims. K.S.A. 60-1507(b). But nothing about the nature of the notice itself works an injustice here.

Wahl's claim is more likely that the lack of notice deprived him of a meaningful opportunity to present all his evidence. But Wahl was represented by counsel during the hearing and makes no allegation that counsel did not adequately represent him. Wahl was present at that hearing. Wahl called relevant witnesses, developed their testimony as well as his own on both of the issues he wished to present, and addressed the merits of the issues at length instead of merely skimming over their surface. The State cross-examined the witnesses and presented lengthy portions of transcripts from prior hearings. The parties also admitted letters from Brunetti to Wahl and the county attorney during plea negotiations, a competency evaluation of Wahl by the Mental Health Center of Crawford County concluding Wahl was incompetent, a subsequent competency evaluation of Wahl by Larned State Hospital concluding Wahl was feigning his mental health issues, Wahl's plea agreement, the transcript of Wahl's plea, the transcript of his sentencing, and copies of Brunetti's visitor badges to the jail from when she visited Wahl. The extent and depth of the inquiry during the hearing demonstrates that both parties addressed the merits of the claims and not merely the threshold issue whether a substantial question of law or fact would support a full evidentiary hearing.

Wahl alleges that he was denied the ability to call additional witnesses and present additional testimony. But the record refutes that assertion, showing that Wahl had no additional testimony other than the affidavit from his brother, which was already in the record. When the district court remarked that the hearing had morphed from a preliminary hearing into an evidentiary hearing and sought counsel's input on what remained to be tried, Wahl's counsel stated:

"Judge, the only other person I would call if there was an evidentiary hearing would be a Matthew Wahl but he's signed a statement that is attached to my client's supplemental pleading that he's filed so that is the only additional information that I would submit."

The State did not object to the admission of that affidavit, and the district court took the motion under advisement so it could review all the evidence in the matter. Accordingly, Wahl received a full evidentiary hearing on his K.S.A. 60-1507 motion.

Wahl specifically contends only that his subsequent pro se written objection "identifies many different pieces of evidence" that should have been considered at an evidentiary hearing, and that his medical records from Community Health and from Larned had not been received at the time of the preliminary hearing. But Wahl's counsel did not include those medical records in the additional evidence he asked the court to consider before making its decision, despite having solicited testimony that referred to them.

Wahl did mail a written objection after the hearing had ended. But he did so at a time he was represented by counsel and had no right to hybrid representation. While a party has the right to represent himself or herself or be represented by counsel, he or she does not have the right to a hybrid representation. *State v. McKessor*, 246 Kan. 1, 12, 785 P.2d 1332 (1990); see *State v. Holmes*, 278 Kan. 603, 620, 102 P.3d 406 (2004). The right to the assistance of counsel and the right of self-representation may be viewed as mutually exclusive rights. A criminal defendant does not have an absolute right to both self-representation *and* the assistance of counsel. *United States v. Halbert*, 640 F.2d 1000, 1009 (9th Cir. 1981).

Because of our hybrid representation rule, a defendant who is represented by counsel cannot dictate matters such as what witnesses to call, see *State v. Ames*, 222 Kan.

8

88, 100, 563 P.2d 1034 (1977), or what motions to file. Thus a court faced with a pro se submission at the time that defendant is represented by counsel has no duty to consider that submission. "A pro se motion generally has no legal effect, due to hybrid representation principles." *Commonwealth v. Valenzuela*, No. 598 MDA 2016, 2017 WL 1948637, at *3 (Pa. Super. Ct. 2017) (unpublished opinion) (finding pro se motion to be a legal nullity); see *Chambers v. Gaul*, No. 105,229, 2017 WL 1955297, at *2 (Ohio Ct. App. 2017) (unpublished opinion) (finding defendant's motions to dismiss for lack of a speedy trial were not properly before the court because the State prohibited hybrid representation); *Bogle v. State*, 284 Or. App. 882, 395 P.3d 643 (2017) (Postconviction court was not required to consider merits of represented defendant's pro se claims and make discretionary decision whether to direct defendant's attorney to assert them.); *State v. Rincon*, No. 112,183, 2015 WL 9455560, at *15 (Kan. App. 2015) (unpublished opinion) (holding a district court is not required to grant a defendant's request to proceed pro se with appointed cocounsel), *rev. denied* 304 Kan. 1021 (2016); *Johnson v. Premo*, 355 Or. 866, 877, 333 P.3d 288 (2014) (holding defendant was without authority to file any pro se motions after appellate counsel entered an appearance on defendant's behalf); *United States v. Noriega-Perez*, 467 Fed. Appx. 698, 703 (9th Cir. 2012) (unpublished opinion) (finding because Noriega-Perez was represented by counsel, only counsel could file motions, so court properly declined to entertain his pro se submissions); *United States v. Bergman*, 813 F.2d 1027, 1030 (9th Cir. 1987) (finding no error in the district court's refusal to acknowledge defendant's pro se filings because he was represented by counsel).

Since there is no right to hybrid representation that is partially pro se and partially by counsel, substantive documents submitted pro se by a person represented by counsel, with the exception of motions to relieve counsel, need not be considered by the court or filed by the clerk. *City of Columbia v. Assa'ad-Faltas*, 420 S.C. 28, 41 n.13, 800 S.E.2d 782 (2017) ("'Tails should not wag dogs. Merely because an appellant believes that the irrelevant is relevant is no reason to turn the system on its head and solemnly contemplate the wisdom of a person who does not have the sense to be guided by experts in an area

9

where he himself possesses no expertise.' [Citation omitted.]") We consider Wahl's pro se objection to be a legal nullity, since Wahl was represented by counsel at the time it was filed. The district court thus had no obligation to reconsider its decision based on matters alleged in that pro se objection.

Nonetheless, in an abundance of caution, we apply the *Mathews* factors to Wahl's claim, first analyzing the individual interest at stake. Wahl's K.S.A. 60-1507 motion alleged ineffective assistance of counsel, as guaranteed by the Sixth Amendment to the United States Constitution. See, *e.g.*, *State v. Cheatham*, 296 Kan. 417, 429-30, 292 P.3d 318 (2013). Because the proceeding involves a fundamental interest under the Constitution, this factor weighs in Wahl's favor. *Cf. In re Adoption of B.J.M.*, 42 Kan. App. 2d. 77, 84, 209 P.3d 200 (2009) (weighing the first *Mathews* factor in favor of the claimant because the proceeding below involved the fundamental liberty interest in parenting one's own child).

We next analyze the risk of erroneous deprivation of the individual interest through the procedures that were used. Here, there was a low risk of erroneous deprivation because Wahl was given notice that he would be having a preliminary hearing on that day and, although he was not required to do so, he voluntarily met the additional burden that an evidentiary hearing would have imposed on him—to put on the evidence needed to determine the merits of his claims instead of merely the evidence needed to determine if a substantial question of law or fact existed that would warrant a full evidentiary hearing. Under these circumstances, the probable value of the additional or substitute procedural safeguard—a full evidentiary hearing—is minimal to nonexistent.

The final factor is the State's interest in the procedure used, including the fiscal and administrative burden additional or substitute procedures would incur. The State has an interest in expediently adjudicating claims under K.S.A. 60-1507. See Supreme Court

10

Rule 183(f) (2017 Kan. Ct. R. 222) (requiring a hearing on a K.S.A. 60-1507 motion to be "prompt"). We also recognize the interest in not holding redundant hearings. Here, had a subsequent evidentiary hearing been held, as Wahl desires, it would have been identical or nearly so to the hearing already held. The State's interest in avoiding such a fiscal and temporal burden is substantial.

On balance, we find that Wahl's due process rights were not violated. Accordingly, we do not reach the State's assertion that Wahl invited any due process deprivation by acquiescing to the district court's suggestion that the preliminary hearing serve as the evidentiary hearing. See *State v. Verser*, 299 Kan. 776, 784, 326 P.3d 1046 (2014).

*Did the district court err by not addressing all of the claims in Wahl's petition?*

Wahl argues the district court erred by not addressing all the claims he raised in his petition. Specifically, Wahl contends that the district court erred in not addressing his claim of ineffective assistance of counsel as it related to Stockard representing Wahl. Wahl claims this violates the rule that "[t]he court must make findings of fact and conclusions of law on all issues presented." Supreme Court Rule 183(j) (2017 Kan. S. Ct. R. 224). The interpretation of a Kansas Supreme Court Rule is a question of law. *Kansas Judicial Review v. Stout*, 287 Kan. 450, 459, 196 P.3d 1162 (2008). Our review of questions of law is unlimited. *Gerhardt v. Harris*, 261 Kan. 1007, 1010, 934 P.2d 976 (1997).

Although Wahl asserted additional issues in his petitions and memorandum, his testimony was limited to only two of them. Wahl presented two issues—whether counsel was ineffective for entering a plea Wahl did not understand due to medication and whether counsel was ineffective for inducing the plea based on statements concerning the death penalty. The district court addressed both of these issues and made findings of fact

11

and conclusions of law on them. Supreme Court Rule 183(j) requires the district court to address "all issues presented."

Wahl did not present any other claims. The State specifically asked Wahl if he had claims in addition to those noted above—that the medications prevented him from making a voluntary plea and that he was coerced into accepting a plea because he was facing the death penalty. Wahl responded that those were the claims he wanted the court to address. The State then asked, "Regardless of whatever has been filed, these are the ones that you want to address; correct?" Wahl responded, "At this point in time, yes." The district court addressed all issues presented, so we find no error in this respect.

*Did the district court err in denying Wahl's motion under K.S.A. 60-1507?*

We next address whether the district court erred in denying Wahl's K.S.A. 60-1507 motion. We review the underlying factual findings for support by substantial competent evidence and the legal conclusions de novo. *State v. Bowen*, 299 Kan. 339, 343, 323 P.3d 853 (2014).

Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel is highly deferential and requires consideration of all the evidence before the judge or jury; the reviewing court must strongly presume that counsel's conduct fell within the broad range of reasonable professional assistance. See *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014). "To prevail on [a claim of ineffective assistance of counsel], a criminal defendant must establish (1) the performance of defense counsel was deficient under the totality of the circumstances" and (2) the defendant was prejudiced by counsel's error. *Sola-Morales v. State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014). To establish prejudice, the defendant must show "that there is a reasonable probability that, but for the deficient performance, the [outcome of the proceeding would have been different]. . . . A 'reasonable probability' is a probability sufficient to undermine

12

confidence in the outcome" of the proceeding. *Miller v. State*, 298 Kan. 921, 934, 318 P.3d 155 (2014).

Wahl contended that his counsel was deficient in two respects: failing to show the court that his plea was not voluntarily made and improperly advising him as to the death penalty.

The district court specifically found: (1) at all relevant times, Wahl was competent and understood and knowingly entered into his plea agreement; (2) at no time did any counsel that represented Wahl communicate to Wahl that he would potentially be subject to a death penalty if found guilty as the result of a trial of his charges of first-degree murder as charged in his case; (3) Wahl knowingly and voluntarily waived his right to a preliminary hearing and trial of his charges; (4) before taking Wahl's plea of guilty, the court specifically informed Wahl that the punishment for the premeditated first-degree murder as charged in the Information "is life in prison and or a fine of up to $500,000," and when asked if he understood what he was charged with and what the punishment would be, Wahl answered "Yes"; (5) Wahl's guilty plea to a first-degree murder charge in this case was a knowing and voluntary plea; and (6) Wahl was represented by experienced and competent counsel, and Wahl's claim of ineffective assistance of counsel was not supported by the totality of evidence presented.

The district court made two additional findings: that the evidence failed to show that medications prescribed for Wahl during the plea negotiations and Wahl's plea had any effect on his ability to knowingly, intelligently and voluntarily enter into the plea agreement and that the evidence failed to show that Wahl's defense counsel did anything during their representation of Wahl that might constitute ineffective representation.

We find substantial competent evidence in the record to support the district court's findings. At the hearing, Wahl testified. He acknowledged that he had signed a plea

13

agreement and that he had been present before a judge who asked him about his plea. Wahl contended that although he had some recollection of the plea hearing he was not able to fully comprehend what was occurring due to medications he was taking. Wahl described his mental state as being "zombie like" in that he did not understand what was occurring and was open to suggestion. Wahl stated that he would not have taken the plea if he had not been on medications.

Wahl also claimed he had been lied to about the possible punishment for his offense. He remembered being told the death penalty was a possible punishment and the hard 25 sentence was his best option. He claimed that after the discussion of the death penalty, he was told that he could receive a 50-year sentence, which influenced him to take the plea. On cross-examination, however, Wahl agreed that at the time of his plea the court had informed him of the maximum penalty for his offense—life in prison. Ultimately, Wahl claimed that he would not have taken the plea had he not been informed that the death penalty was an option.

Next, Wahl called attorney Brunetti as a witness. Brunetti did not recall any issue with Wahl's medications. While counseling Wahl concerning the plea, Brunetti read through the plea agreement with him and answered any questions he had. Brunetti believed that Wahl had understood the plea agreement and that she had answered all his questions regarding the plea. Brunetti believed that Wahl was lucid and competent to plea. She stated that she would not proceed with a plea if she did not believe the defendant was competent. When Brunetti informed Wahl the decision to accept the plea was solely his, Wahl responded that he wanted to take the plea.

Brunetti denied ever having told Wahl that he faced the death penalty. Brunetti was not qualified to handle death penalty cases as a defense attorney at the time she represented Wahl. She denied having discussed the death penalty at any time during any court proceeding or during any conversation with Wahl or his family. Instead, in a letter

14

Brunetti sent to Wahl on July 22, 2010, she informed Wahl of the State's plea offer and that the possible sentence was a hard 50.

The final witness was Marjorie Buckley, Wahl's mother. Buckley was present during some of the conversations between Wahl and Brunetti. Buckley testified that she never heard Brunetti tell Wahl that he was subject to the death penalty. She clarified that Brunetti had said that this was a death penalty crime, but the death penalty was not on the table for Wahl. Ultimately, Buckley acknowledged that she understood that the death penalty was not an issue in Wahl's case.

The affidavit from Wahl's brother conflicted with his mother's testimony. It stated that he heard Brunetti tell Wahl that he "could be sentenced to death if he went to trial" and that "a plea would give him 25 years before maybe he would get parole."

Resolving the conflicting testimony about the death penalty was a matter for the district court. The district court's findings reflect its tacit reliance on the testimony of Brunetti and Wahl's mother, rather than on Wahl and his brother regarding this matter. Brunetti's testimony that she was not qualified to handle a death penalty case is compelling. The record noted above contains substantial competent evidence supporting the district court's finding that counsel did not communicate to Wahl that he would potentially be subject to a death penalty if found guilty as the result of a trial in this case.

Similarly, resolving the issue about the effect of Wahl's medications on his decision to take the plea required the court to weigh Wahl's testimony against Brunetti's. The district court gave Brunetti's testimony greater weight. Wahl did not recall events on the date leading up to his plea or the date of his plea agreement—Brunetti did.

During Wahl's plea hearing, the district court inquired at length about Wahl's medications:

15

"The Court: Okay. Are you taking any medication at this time, Mr. Wahl?

"The Defendant: Yes.

"The Court: What medication are you taking?

"The Defendant: I have no idea, I don't know the names of them.

"The Court: Okay. Can you tell me what affect upon you this medication has?

"The Defendant: No.

"The Court: Do you know the purpose of taking your medication?

"The Defendant: Yeah, it is to stay calm.

"The Court: Okay. Would there be anything about that medication that would prevent you from understanding what we are talking about?

"The Defendant: No.

"The Court: Have you understood me?

"The Defendant: Yes.

"The Court: Have you comprehended the questions I've asked of you?

"The Defendant: Yes.

"The Court: You've been able to track with me, you've [been] able to follow me; is that correct?

"The Defendant: Yes.

"The Court: And, again, are you doing this today freely and voluntarily?

"The Defendant: Yes.

. . . .

"The Court: Okay. Do you have any comments you want to make, sir?

"The Defendant: No, sir.

"The Court: Ms. Brunetti, any comments?

"Ms. Brunetti: Just briefly, Your Honor. Concerning Duane's medication, I've checked with the jail, it is all prescription medication and he's on a regimen of medication and I don't have any problems with that.

"The Court: All right. And are you sure, Mr. Wahl, that there is nothing about that medication that causes you to be unable to understand what we are discussing?

"The Defendant: No.

"The Court: So you are clear headed today; is that correct?

"The Defendant: Yes.

"The Court: Is that correct, sir?

"The Defendant: Yes, correct, sir."

16

The Court revisited the issue of Wahl's medications again, after the State offered the factual basis for the plea:

> "The Court: Thank you. Mr. Wahl, the Court is looking at the plea agreement. Again, it does bear your signature?
>
> "The Defendant: Yes.
>
> "The Court: Signed and dated on October 7. Is that correct, sir? Is this your signature on the plea agreement?
>
> "The Defendant: Yeah, yes, sir.
>
> "The Court: Okay. And, again, are you sure you understand everything that is contained in the plea agreement?
>
> The Defendant: Yes.
>
> The Court: You're sure you don't have any questions of myself or Ms. Brunetti with regard to anything that is in the plea agreement?
>
> "The Defendant: I accept it.
>
> "The Court: Okay. And, again, are you doing this today freely and voluntarily?
>
> "The Defendant: Yes.
>
> "The Court: Your medication does not prevent you from understanding what we are doing today, what you are doing today; is that correct, sir?
>
> "The Defendant: Yes.
>
> "The Court: And I don't mean to put words in your mouth so if I'm incorrect, please correct me. You are doing this today and you understand what it is you are doing; is that correct?
>
> "The Defendant: Yes.
>
> "The Court: Okay. Mr. Wahl, I will accept your plea. I will find it is knowing and voluntary . . . ."

Wahl's testimony during his 60-1507 hearing in 2015 contradicts his testimony during his plea agreement in 2010 and was over 4 years removed in time from his plea hearing, and his recall during the 60-1507 hearing about the plea hearing was admittedly very little. The district court chose to give more weight to Wahl's testimony during his plea hearing and to Brunetti's testimony that Wahl was able to make a voluntary and knowing plea and

17

there was no issue about his medications. Having reviewed the testimony from the hearing, as well as the transcripts from Wahl's plea, we find substantial competent evidence supporting the district court's decision that Wahl's guilty plea to a first-degree murder charge in this case was a knowing and voluntary plea. Accordingly, the record fully supports the district court's denial of Wahl's K.S.A. 60-1507 motion.

*The district court erred in sentencing Wahl to lifetime postrelease supervision.*

The district court sentenced Wahl to a term of lifetime postrelease supervision. The State concedes this is an error and states that it has prepared a journal entry to correct it. Under K.S.A. 2009 Supp. 22-3717(b)(1), Wahl is eligible for lifetime parole, not lifetime postrelease supervision, after he serves 25 years of his lifetime sentence. Wahl's sentence is an illegal sentence because it does not conform to the statutory requirements. See *State v. Moncla*, 301 Kan. 549, 551, 343 P.3d 1161 (2015). The court may correct an illegal sentence at any time. K.S.A. 22-3504(1). We remand so that the district court may resentence Wahl by correcting this error in the event that it has not already done so.

Affirmed in part, vacated in part, and remanded with directions.

18